46

JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, a nombre de la UNIÓN DE EMPLEADOS DE HOTELES, CAFÉS Y RESTORANES DE PUERTO RICO, peticionaria, *v.* THE ESCAMBRÓN BEACH CLUB AND HOTEL CORP., demandada.

Núm. 16.—*Sometido:* Marzo 8, 1949. *Resuelto:* Mayo 27, 1949.

*Hon. Procurador General Vicente Géigel Polanco (Luis Negrón Fernández, Ex Procurador General,* en la petición) y *A. Torres Braschi, Procurador General Auxiliar, Yamil Galib Frangie, Procurador General Auxiliar Especial* y abogado de la Junta de Relaciones del Trabajo, e *Iram Cancio Vilella* y *Luis G. Estades,* abogados también de la Junta de Relaciones del Trabajo, abogados todos de la peticionaria; *R. Rivera Zayas, G. Rivera Cestero,* y *Milton F. Rúa,* abogados de la demandada.

SENTENCIA

San Juan, Puerto Rico, a 27 de mayo de 1949.

Por los fundamentos expuestos en la Parte IV de la opinión emitida en el caso de *Junta de Relaciones del Trabajo de Puerto Rico* v. *The New York & Porto Rico Steamship Company,* resuelto el 31 de marzo de 1949,(¹) expídase por el secretario mandamiento para que la demandada Escambrón Beach Club dé cumplimiento al laudo emitido en este caso reponiendo al empleado Julio Jiménez en su empleo como botones (*bellboy*) y le satisfaga los salarios a que tiene derecho desde que debió reponerlo una vez cumplido el término de suspensión.

Así lo pronunció y manda el Tribunal y firma el Sr. Juez Presidente. El Juez Asociado Sr. Todd, Jr. disintió. El Juez Asociado Sr. Negrón Fernández no intervino.

Opinión disidente del Juez Asociado Sr. Todd, Jr.

De nuevo me veo precisado a disentir y a no aceptar, como aplicable a los hechos probados en este caso, la a mi juicio equivocada doctrina establecida en el de *Junta de Relaciones del Trabajo de Puerto Rico* v. *The New York & Porto Rico Steamship Co.,* 69 D.P.R. 782.

(¹) 69 D.P.R. 782.

La cuestión sometida a arbitraje en este caso fué, escuetamente, la siguiente: "El alegado *despido injustificado* del obrero Julio Jiménez."

Los hechos que dieron lugar a que este caso fuera sometido al arbitraje, sucintamente expuestos y según aparecen en el laudo, fueron los siguientes:

Julio Jiménez trabajaba de *"bellboy"* en el Escambrón Beach Club. El día 10 de julio de 1948, un sábado a las doce de la noche, el Sr. Manuel Camuñas, Administrador del Club, necesitó transportar una poltrona de un sitio cercano a la entrada del Escambrón Beach Club hasta el trono situado en el salón principal del mencionado establecimiento. Como se trataba de un mueble muy pesado, requirió los servicios de un *"bus boy"*—Víctor Ramírez—y de Julio Jiménez. El primero accedió. No así el segundo quien salió corriendo del Club y se escondió en la taquilla. El Sr. Camuñas llegó hasta la puerta y le dijo a Jiménez: "No te escondas, viejo, que te necesito para que me ayudes a cargar una silla." Jiménez salió, no contestó nada, entró al Club y entonces se negó a realizar el trabajo alegando que su condición de *"bellboy"* no le autorizaba a realizar ese menester. Como consecuencia de esa negativa, el Sr. Camuñas despidió al obrero en ese mismo momento, indicándole que pasara por la oficina el lunes próximo a recibir el dinero que se le adeudaba.

La prueba que tuvo ante su consideración el Comité de Arbitraje dejó comprobadas la falta de disciplina, la desobediencia imprudente a una orden razonable y la falta de respeto en que incurrió el empleado Jiménez. El propio Comité en su decisión así lo dice en esta forma:

"A la luz de la evidencia sometida al Comité de Arbitraje en la vista celebrada el lunes 9 de agosto de 1948 en el Departamento del Trabajo en San Juan, es innegable que el 'Bell Boy' del Escambrón Beach Club Julio Jiménez *se le escondió* al señor Manuel Camuñas, Administrador del mencionado negocio, la noche del 10 de julio de 1948, en los momentos en que éste lo necesitó para que le ayudara a otro compañero de Jiménez a transportar una poltrona de un sitio

a otro dentro del Escambrón Beach Club. Esa misma evidencia comprueba que el señor Julio Jiménez incurrió en una *desobediencia imprudente al negarse a acatar una orden de su superior* en el sentido de que, conjuntamente con otro compañero de trabajo, transportase la mencionada poltrona tal como se lo ordenó el Administrador. Indiscutiblemente *que esta doble culpabilidad* requiere un correctivo a tono con la magnitud de las faltas, pero tomando en consideración las circunstancias atenuantes de que se trata de un empleado que ha trabajado durante tres años en el mismo establecimiento, a quien nunca antes se le había llevado al Comité de Quejas y Agravios, y quien por su manifiesta juventud incurrió en *una falta* en la que posiblemente no hubiese incurrido de haber tenido más madurez o de haber sido debidamente entrenado en academias, y *cuyas faltas no evidencien deformidad moral, perversidad, etc., no consideramos justificado, por excesivo,* un despido definitivo. Por consiguiente, un castigo justo será el de suspendérsele de empleo y sueldo por dos meses a partir de la fecha del 10 de julio del año en curso; disponiéndose que al reintegrarse a su trabajo en su categoría de 'Bell Boy', cumplidos los dos meses, Julio Jiménez debe observar en adelante una conducta intachable, pues de incurrir en otra falta que ameritase una querella ante el Comité de Quejas y Agravios y no pudiese probar su inocencia, *entonces se convertiría automáticamente en un reincidente* con el peligro de que la suspensión definitiva que en este caso pedía la parte patronal, sería la que podría imponérsele entonces como único castigo." (Bastardillas nuestras.)

Es por demás curioso este laudo. Después de admitir que el obrero incurrió en "una desobediencia imprudente al negarse a acatar una orden de su superior" y que el obrero "se le escondió" al Sr. Camuñas y que esa "doble culpabilidad" requería un correctivo, luego se dice que todo ello constituyó "una falta" y, por tanto, no considerando justificado "por excesivo, un despido definitivo", se le impone "un castigo justo", consistente en una suspensión de empleo y sueldo por dos meses.

La cuestión sometida al Comité fué el "despido injustificado del obrero", no como castigo, sino como derecho del patrono a despedir a un empleado por justa causa. Probadas las actuaciones de indisciplina, desobediencia y falta de respeto del obrero, constitutivas de justa causa para el des-

pido, actuó sin jurisdicción el Comité de Arbitraje al imponer un castigo a su antojo y capricho. Véanse los casos citados en mi opinión disidente en el caso de *Junta de Relaciones del Trabajo* v. *The New York & Porto Rico Steamship Co.*, supra. Digo esto porque resalta la inconsistencia de la regla establecida por esta Corte en el caso últimamente citado, cuando vemos que en dicho caso, por actuaciones negligentes de los obreros allí envueltos que ocasionaron pérdidas de consideración a la Compañía, se les impuso por el Comité una semana de suspensión, mientras que en el presente, sin que se demostrara pérdida alguna al patrono, se le impone al obrero, por otro Comité, dos meses de suspensión.

Tal y como está redactado el laudo en este caso es sólo en casos de "reincidencia" en una "falta" que conlleve "deformidad moral, perversidad, etc." (no sé qué alcance podrá dársele a ese "etc." en futuros laudos) por parte del obrero, que posiblemente el Comité estaría dispuesto a sostener un despido por justa causa. El precedente establecido en el caso de la *New York & Porto Rico Steamship Co.* y ahora ratificado, a mi juicio, con mayores y más serias consecuencias, me han compelido a expresar de nuevo mi inconformidad con el mismo.

Digo que las consecuencias son mayores y más serias porque el caso de autos presenta una situación de hechos realmente importante. Se está resolviendo que un empleado puede ser indisciplinado, desobedecer órdenes razonables y faltarle el respeto a su patrono, públicamente, en un club social durante la preparación o celebración de un baile, y que ninguno de esos hechos probados constituye justa causa para despedirlo de su empleo.

En el caso de la *New York & Porto Rico Steamship Co.*, esta Corte aceptó que probada la negligencia de un empleado no constituye justa causa para su despido por el patrono, si así lo resuelve un Comité de Arbitraje. Ahora se acepta que probadas la indisciplina, la desobediencia a órdenes razonables y la falta de respeto de un empleado, tampoco consti-

tuyen justa causa para su despido por el patrono, si así lo resuelve un Comité de Arbitraje. Se está aceptando, por tanto, en este caso, sin decirlo, que—como resolvió el Comité—tiene que haber una reincidencia o que la actuación del empleado demuestre "deformidad moral, perversidad, etc." para que se establezca un despido por justa causa. En qué caso, y bajo qué circunstancias especialísimas, es que habrá de quedar establecido por un Comité de Arbitraje lo que constituye justa causa para un despido, sin las anteriores limitaciones, no lo sabemos, pues aún está por llegar a esta Corte un recurso en el cual sea el obrero despedido por justa causa el que haya perdido su caso ante un Comité de Arbitraje.

El efecto de estas decisiones será, indudablemente, la renuencia que sentirán los patronos, en futuros convenios colectivos, a obligarse a someter estos casos a arbitraje, trayendo como consecuencia mayores dificultades en las relaciones obrero–patronales.

Debería desestimarse la petición.