JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandante y recurrente, *v.* CARIBBEAN CONTAINER COMPANY, demandada y recurrida.

*Número:* JRT-63-18      *Resuelto:* 9 de enero de 1964

*J. B. Fernández Badillo, Procurador General, José Orlando Grau,*
y *Luis M. Rivera Pérez,* abogados de la Junta de Relaciones
del Trabajo; *Celestino Morales, Jr.,* y *Francisco L. Acevedo
Nogueras,* abogados de la demandada.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como
Presidente de Sala y los Jueces Asociados Señores Rigau y
Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

La querellada suspendió de empleo y sueldo a un empleado
suyo por el término de dos días. Por no estar conforme con
esa sanción disciplinaria, la Unión llevó el asunto al Comité
de Quejas y Agravios a tenor con lo pactado en el convenio
colectivo. Como el Comité, compuesto por dos representantes
del patrono y dos de la Unión, no llegó a un acuerdo sobre el
asunto, las partes solicitaron del Secretario del Trabajo los
servicios de un árbitro para resolver la controversia. Esto
también se hizo conforme lo dispuesto en el convenio. La
sumisión quedó redactada en los siguientes términos:

"Determinar si la suspensión de dos días impuesta al empleado
Miguel Charriez, fue o no justificada de acuerdo al convenio
colectivo."

El laudo del árbitro fue el siguiente:

"La suspensión de dos días impuesta al empleado Miguel
Charriez, fue injustificada de acuerdo con el convenio colectivo
y la evidencia sometida por las partes."

Basándose en el resultado del arbitraje, el empleado y la
Unión requirieron del patrono que pagase al empleado el im-
porte de su salario por los dos días que estuvo suspendido, a lo

cual aquél se negó. Entonces la Unión solicitó que el asunto se ventilase en el Comité de Quejas y Agravios y también a esto se negó el patrono. Ante la negativa del patrono de concurrir al Comité, la Unión formuló el cargo a la querellada que dio origen a este procedimiento, imputándole haber violado disposiciones del convenio colectivo. La Junta de Relaciones del Trabajo expidió la correspondiente querella.

El Oficial Examinador, Lcdo. Miguel A. Velázquez Rivera, celebró la vista pública y rindió su Informe a la Junta, en el cual concluyó que en efecto, al negarse la querellada a concurrir al Comité de Quejas y Agravios para dilucidar lo relativo a la paga del salario correspondiente a los dos días en cuestión, la querellada violó el convenio colectivo e incurrió en una práctica ilícita de trabajo a tenor con el Art. 8(1)(f) de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 69 (1) (f).[1] La Junta hizo suyas las determinaciones del Oficial Examinador, con una excepción, y emitió su Decisión y Orden Núm. 337 de 9 de octubre de 1963.[2] En síntesis, la Junta ordenó a la querellada a comparecer al Comité de Quejas y Agravios para ventilar allí lo relativo a la paga del salario de Charriez.

Tenemos ante nos una petición de la Junta para que pongamos en vigor su Orden, motivada dicha petición por la negativa del patrono a cumplir la orden.

La querellada, señala los siguientes errores:

1. "La orden de la Junta es contraria a derecho ya que interpretó erróneamente la autoridad de un árbitro en un caso específico como éste."

2. "La orden y decisión de la Junta son contrarias a derecho ya que hubo un laudo de arbitraje que decidió el problema en cuestión y ésta es final e inapelable."

---

[1] El citado Art. 8 define las prácticas ilícitas de trabajo en que puede incurrir un patrono y una organización obrera, y el inciso citado declara práctica ilícita de trabajo el que un patrono viole los términos de un convenio colectivo.

[2] Dicha excepción consistió en que la Junta eliminó el primer párrafo del Apartado III del Informe del Oficial Examinador, el cual aparece en la pág. 8 de dicho escrito (mimeógrafo).

El primer error señalado no se cometió. La autoridad del árbitro no está aquí en controversia. No fue impugnada por ninguna de las partes. Por el contrario, ambas partes la aceptaron. En su breve discusión de este error la querellada expresa que discrepa de lo dicho por el Oficial Examinador en el primer párrafo del apartado III de su Informe. Resulta académico el punto pues como ya vimos (escolio 2) la Junta en su Decisión y Órden eliminó ese párrafo por considerarlo innecesario para la resolución del caso.

En cuanto al segundo error señalado, la posición de la querellada es que el laudo del árbitro es final e inapelable. Es cierto que el laudo del árbitro es final e inapelable y que no puede litigarse en los tribunales lo que se arbitró válidamente, *Rivera Adorno* v. *Autoridad de Tierras*, 83 D.P.R. 258, 265 y 267 (1961); *Junta* v. *N.Y. & P.R.S.S. Co.*, 69 D.P.R. 782, 800 (1949), pero tal aseveración no implica que se cometió el error señalado. Si se releen los términos de la sumisión y del laudo del árbitro, antes transcritos, se verá que el árbitro resolvió exactamente la cuestión que le fue planteada. Estamos frente a una sumisión y un laudo válidos, y el laudo resolvió la cuestión planteada. Nadie está apelando del laudo.

Lo que ocurre es que con motivo de la decisión del árbitro surgió una nueva cuestión: si Charriez tiene o no derecho a paga por los dos días en que estuvo suspendido. Obviamente, si la decisión del árbitro en cuanto a la suspensión hubiese sido contraria a Charriez esta segunda cuestión, relativa a la paga, no hubiese surgido. Pero la decisión del árbitro fue favorable a Charriez. Aceptamos que el asunto de la paga pudo haber sido planteado en la sumisión y que pudo haber sido resuelto por el árbitro, pero no lo fue. Luego, quedó pendiente de ser planteado y resuelto, como tenía que serlo. ¿Acaso pretende el patrono que cuando el Comité o el árbitro determinan que un empleado ha sido suspendido injus-

tificadamente, dicho empleado le done los salarios no percibidos por dicha suspensión injustificada? ¿Y acaso pretende también el patrono que la Unión se cruce de brazos ante su negativa de reunirse en el Comité de Quejas y Agravios? La situación está prevista por el propio convenio colectivo, el cual en su Art. XIII, inciso 8, dispone que cuando el Comité de Quejas y Agravios resuelve ordenar la reinstalación de un obrero que haya sido despedido o suspendido, dicho Comité tendrá la facultad de ordenar el pago total o parcial de los pagos atrasados a que pueda tener derecho el empleado. Como se ve, por los propios términos del convenio, el asunto es claramente de la competencia del Comité de Quejas y Agravios.

■ Al negarse la querellada a ventilar en el Comité de Quejas y Agravios el derecho que pueda tener a sus salarios el empleado que fue suspendido injustificadamente, violó el convenio colectivo e incurrió en una práctica ilícita de trabajo. Desde luego, el segundo error señalado tampoco se cometió.

■ Por razones que estimamos buenas los tribunales están sancionando con su decidido respaldo los procedimientos relativos a los Comités de Quejas y Agravios y al arbitraje que las partes establecen en sus convenios colectivos. Véase *Pérez* v. *Autoridad de Fuentes Fluviales*, 87 D.P.R. 118 (1963) y las autoridades allí citadas. V. también *J.R.T.* v. *Caribbean Container Co.*, 89 D.P.R. 710 (1963).

Leo Weiss, Abogado de la Junta Nacional de Relaciones del Trabajo, al comentar los seis casos que estima más importantes relacionados con el arbitraje de controversias obrero-patronales decididos por el Tribunal Supremo de los Estados Unidos durante el año 1961–62, en 51 Geo. L.J. 284, 303 (1963), expresa que la base de la actitud jurisprudencial sobre esta materia consiste en hacer que las partes cumplan lo pactado en los convenios colectivos. En esa misma página y en la siguiente señala el autor que los pronunciamientos de política pública en el campo de relaciones obreras hechos por el

Congreso, por el Presidente y por el Tribunal Supremo han recalcado que la solución pacífica de las disputas obreras, especialmente mediante el procedimiento de arbitraje, es vital para el interés público y que debe preferirse a la "guerra económica." (³)

Por nuestra parte, en *Pérez* v. *Autoridad de Fuentes Fluviales*, supra, ya habíamos dicho:

"Hay aquí envuelta una cuestión de interés público. Nos referimos a las relaciones obrero-patronales, a la negociación colectiva y a los procedimientos de arbitraje. La política pública expresada por la Asamblea Legislativa de Puerto Rico en nuestra Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 62, señala la necesidad de promover la negociación colectiva como un instrumento eficaz para lograr la paz industrial. La experiencia ha demostrado que las relaciones obrero-patronales están muy ligadas a la economía de la sociedad contemporánea y al bienestar general. La negociación colectiva y los procedimientos de querellas y arbitraje por ella establecidos revisten interés público pues son medios directos y eficaces de promover la paz y la estabilidad en la industria, y la distribución más justa de sus frutos."

*Se dictará sentencia poniendo en vigor la Orden de la Junta de Relaciones del Trabajo, Número 337 de 9 octubre de 1963, en la forma en que se transcribe en la Sentencia.*

---

(³) Los seis casos comentados por Weiss en el citado artículo son los siguientes: *Charles Dowd Box Co.* v. *Courtney*, 360 U.S. 502 (1962); *Retail Clerks Ass'n., Local 172* v. *Lion Dry Goods, Inc.*, 369 U.S. 17 (1962); *Local 174, Teamsters Union* v. *Lucas Flour Co.*, 369 U.S. 95 (1962); *Drake Bakeries, Inc.* v. *Local 50, American Bakeries Workers*, 370 U.S. 254 (1962); *Atkinson* v. *Sinclair Ref. Co.*, 370 U.S. 238 (1962); *Sinclair Ref. Co.* v. *Atkinson*, 370 U.S. 195 (1962).