JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, ETC., peticionaria, *v.* EXECUTIVE HOUSE, INC., h.n.c. CONDADO BEACH HOTEL, demandada.

*Número:* JRT-64-3      *Resuelto:* 26 de febrero de 1965

J. B. *Fernández Badillo, Procurador General, José Orlando Grau, Celia Canales de González, Marta Ramírez de Vera,* y *Luis M. Rivera Pérez,* abogados de la peticionaria; *Canales & Segarra,* abogados de la demandada.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

El Juez Asociado Señor Rigau emitió la opinión del Tribunal.

Se trata en este caso de una petición de la Junta de Relaciones del Trabajo, al amparo del Art. 9 (2) (c) de la Ley de Relaciones del Trabajo, Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. sec. 70 (2) (c), para que pongamos en vigor un laudo de arbitraje. La Unión de Trabajadores de la Industria Gastronómica (Independiente), en representación de ciertos empleados (*croupiers*) del casino del Hotel Condado, suscribió con el referido patrono un nuevo convenio colectivo el 1ro. de noviembre de 1962. El anterior convenio había expirado en abril de 1962. El nuevo convenio regiría por dos años. El Artículo VIII, párrafo 1 del nuevo convenio, lee así:

"Todo empleado cubierto por este convenio tendrá derecho a vacaciones regulares con sueldo completo que se hará efectivo al comenzar a disfrutarlas, a razón de un día y cuarto (1¼) por cada mes de trabajo, salvo casos de suspensión o licencia sin sueldo por más de dos semanas. *Tendrá derecho, además, a un*

*día de vacaciones adicional por cada año de servicios prestados, hasta un máximo de cinco días adicionales.* Las vacaciones las disfrutará consecutivamente el empleado y se concederán en forma que no interrumpa el normal funcionamiento del Casino, a cuyo fin el Patrono establecerá los turnos correspondientes; Disponiéndose que el Patrono deberá notificar al empleado con no menos de quince (15) días de anticipación la fecha en que le corresponda comenzar sus vacaciones. El empleado no podrá exigir el disfrute de vacaciones hasta que las hubiere acumulado por un año. Mediante acuerdo por escrito entre Patrono y empleado podrá acumularse por más de un año, pero nunca por más de dos." (Subrayado nuestro.)

El convenio anterior no contenía una cláusula de similar naturaleza.

Con motivo de discrepancias surgidas en torno a la interpretación a darse a algunas de las cláusulas del convenio, la Unión y el Patrono sometieron a arbitraje dos cuestiones una de las cuales ha dado margen a la presente petición.(1) El acuerdo de sumisión suscrito por las partes, en lo que al asunto en controversia concierne, lee así:

"Determinar si las palabras 'tendrá derecho además a un día de vacaciones adicional por cada año de servicio prestado hasta un máximo de cinco días adicionales' en el Artículo VIII, párrafo 1 del convenio colectivo vigente significan que los empleados del Casino del Hotel Condado, *deben recibir ese derecho retroactivamente o prospectivamente.*" (Subrayado nuestro.)

La decisión del árbitro fue adversa al patrono al resolver aquél que el derecho de los obreros a vacaciones, según contemplado en el convenio, tenía efecto retroactivo. El patrono se negó a acatar esta parte del laudo motivando dicha negativa que la Junta acuda ante nos pidiéndonos que lo pongamos en vigor.

---

(1) La otra cuestión versaba sobre si conforme a la cláusula X, párrafo 3, los empleados tenían derecho a paga triple por trabajar en ciertos días feriados. La decisión fue adversa al patrono y éste acató la misma, por lo cual no está en controversia en este recurso.

Como fundamentos de oposición a que demos efectividad al laudo en cuestión el patrono expone lo siguiente: (1) la retroactividad a que se refiere el laudo—y la cláusula objeto de arbitraje—es a la fecha de vigencia del nuevo convenio y no incluye la consideración de los años de servicios prestados anteriormente a la vigencia del nuevo convenio para efectos de computar los 'días adicionales' a ser incluidos en las vacaciones a concederse a cada empleado y (2) el laudo es nulo por ser el producto de una sumisión insuficiente no viniendo el patrono, por consiguiente, obligado a cumplirlo. Ambas contenciones carecen de mérito.

En lo referente a la primera cuestión planteada, el patrono admite que es correcta la interpretación del árbitro en cuanto a la retroactividad pero le da un alcance distinto al laudo al pretender conceder los 'días adicionales' a que sea acreedor un empleado, según los años de servicios prestados, sólo a partir de la fecha de vigencia del nuevo convenio. En su laudo emitido el 18 de octubre de 1963 el árbitro se expresa al respecto de este modo:

"Para empezar cabe formularnos la siguiente pregunta: ¿De los empleados cubiertos por el convenio colectivo vigente quiénes tienen derecho a recibir un día adicional de vacaciones, hasta un máximo de cinco días adicionales? De acuerdo con la frase subrayada, [se refiere a la frase *servicios prestados*] tienen derecho a ese día adicional los empleados cubiertos por el convenio colectivo que hayan prestado servicios. En otras palabras, tienen derecho, además, a un día adicional de vacaciones por cada año de servicios prestados, y si no los han prestado, según los vayan prestando. Otra cosa muy distinta sería si la cláusula en cuestión dijese por servicios que se presten. Entonces sí que la intención hubiese sido con carácter prospectivo únicamente. Pero esa no es la realidad al amparo del contexto copiado. Cuando las partes contratantes insertaron en la disposición que nos ocupa la frase 'por cada año de *servicios prestados* . . .' lógicamente tenían que referirse a los servicios que ya se habían prestado en el pasado, además de los que se presten en el futuro."

Por vía de ilustración el árbitro nos ofrece un ejemplo que concreta y clarifica su interpretación. Es el siguiente:

"El empleado X comenzó a trabajar para el Hotel el 1ro. de octubre de 1960. El día 1ro. de octubre de 1963, cumplió tres años de *servicios prestados al* Hotel. De acuerdo con el primer párrafo, Artículo VIII, titulado *Vacaciones,* del convenio colectivo en vigor, el empleado X tiene derecho a los 15 días de vacaciones que fija el convenio, condición que ya existía desde anteriores convenios, pero en adición a esos 15 días tiene derecho también a tres días, adicionales de vacaciones, computados a razón de un día adicional por cada uno de los tres años de *servicios prestados* a partir del 1ro. de octubre de 1960. En otras palabras, se aplica en este caso la retroactividad por las razones expresadas, pero de aquí en adelante, o sea, del 1ro. de octubre de 1963, el empleado X, de continuar trabajando para el Hotel, tendrá derecho a un día adicional de vacaciones cuando llegue el día 1ro. de octubre de 1964, y si trabaja del 1ro. de octubre de 1964 hasta el 1ro. de octubre de 1965, adquiere por este convenio, el derecho al disfrute de un día adicional de vacaciones. De ahí en adelante, no tiene derecho a más días adicionales de vacaciones, a la luz del presente convenio. Es decir, lo prospectivo en el caso del empleado X se aplicaría a partir del 1ro. de octubre de 1963."

El patrono pretende que interpretemos el laudo de una manera distinta al que las palabras claras del árbitro indican. A tal efecto nos somete una serie de fórmulas que a su juicio ejemplifican el alcance que ha de darse al laudo en cuestión. No es esa nuestra función. Hemos dicho consistentemente que cuando las partes en un convenio colectivo estipulan que las disputas obrero-patronales en torno a la interpretación del mismo han de ser resueltas siguiendo un procedimiento de arbitraje que culmine en un laudo a ser acatado por la parte perdidosa, han sustituido a los tribunales y en su lugar han puesto al Comité o al árbitro, según sea el caso, y no puede litigarse en los tribunales lo que se arbitró válidamente. *López* v. *Destilería Serrallés,* 90 D.P.R. 245 (1964); *J.R.T.* v. *Caribbean Container Co.,* 89 D.P.R. 742 (1964); *Rivera Adorno* v. *Autoridad de Tierras,* 83 D.P.R. 258

(1961); *Junta* v. *N.Y. & P.R. Steamship Co.*, 69 D.P.R. 782 (1949). Hemos enfatizado, además, que los acuerdos de arbitraje están revestidos de interés público, *Junta* v. *Caribbean Container Co.*, supra; *Pérez* v. *Autoridad de Fuentes Fluviales*, 87 D.P.R. 118 (1963), y que los mismos deben hacerse cumplir estrictamente si la sumisión es clara y libre de ambigüedad. (²) *Seafarers Inter'l Union* v. *Tribl. Superior*, 86 D.P.R. 803 (1962). Por otro lado hemos consignado que a menos que las partes hayan estipulado que la decisión del árbitro se ajustará a derecho, no entraremos a considerar los méritos jurídicos, ni de ninguna otra índole, de su dictamen y que, por consiguiente, meros errores de criterio no justifican que se deje sin efecto un laudo. *J.R.T.* v. *Cooperativa Cafeteros*, 89 D.P.R. 498 (1963); *Junta* v. *Orange Crush of P.R.*, 80 D.P.R. 292 (1958); *Junta* v. *N.Y. & P.R. Steamship Co.*, supra.

■ El patrono en el caso de autos alega que de no interpretarse el laudo en la forma que él sostiene cabe, en la alternativa, su impugnación por defecto o insuficiencia en la sumisión lo cual trajo consigo, en su opinión, la falta de claridad del laudo y el no resolver éste finalmente la cuestión sometídale. Esta contención parte de la premisa de que el convenio de sumisión no clarificó lo que se entendía por "retroactividad." Es decir, que "no se aclaró el alcance práctico de la llamada retroactividad." No tiene razón.

En la vista celebrada el 19 de julio de 1963, el árbitro Rafael A. López Berríos pidió a las partes que esbozaran en síntesis sus posiciones. La Unión descansó "en las letras claras y precisas de las palabras citadas en la sumisión que son parte del párrafo 1 del Artículo VIII del convenio. . ."

---

(²) Para un caso reciente, resuelto por el Tribunal Supremo de los Estados Unidos, en el mismo sentido que *Pérez* v. *Autoridad de Fuentes Fluviales*, supra, véase *Republic Steel Corp.* v. *Maddox*, resuelto en 25 enero 1965, 33 U.S.L. Week 481 (379 U.S. 650).

La posición patronal puede resumirse como sigue: Como el convenio anterior no contenía una disposición sobre días adicionales a ser añadidos a los 15 días de vacaciones regulares a que se era acreedor bajo el mismo, ese derecho nació con el nuevo convenio que entró en vigor el 1ro. de noviembre de 1962. Como, por otro lado, las vacaciones se acumulaban por años naturales, era a partir del primer año de vigencia del nuevo convenio que se tenía derecho a los "días adicionales" o sea, a partir del 30 de noviembre de 1963. En definitiva su contención fue que es prospectiva la cláusula del convenio en cuanto a este particular.

La posición de la Unión fue que al decir "servicios prestados" se estaban considerando los años de servicios prestados por el obrero con antelación a la vigencia del nuevo convenio y que, por consiguiente, aunque éste era nuevo convenio la aplicación de esta cláusula operaba retroactivamente.

Éstos fueron los reclamos contrapuestos que el árbitro venía llamado a resolver y que, en efecto, resolvió. Debe observarse que el convenio colectivo en cuestión se extiende desde el 1ro. de noviembre de 1962 hasta el 31 de octubre de 1964, es decir, es valedero por sólo dos años. Por consiguiente, la controversia en cuanto a la interpretación de la cláusula relativa a los días adicionales por cada año de servicios prestados tenía que versar en torno a si era con carácter prospectivo o retroactivo pues de otro modo serían un contrasentido estipular que se concederían hasta 5 días adicionales cuando el convenio sólo rige por dos años. Por otro lado, el árbitro, al comenzar la vista, procedió a dar lectura al acuerdo de sumisión; lo interpretó en el sentido de si el derecho a días adicionales era prospectivo o retroactivo e inquirió de las partes si había alguna enmienda o modificación que hacerle al mismo a lo cual ripostaron ambas partes en la negativa. *Resolvemos pues, que el acuerdo de sumisión fue claro y suficiente y que el árbitro resolvió exactamente la cuestión que tenía ante sí. Lo que resta es, como dijimos en J.R.T.* v.

*Cross Const. Corp.*, 90 D.P.R. 763 (1964), *un mero cálculo matemático para ajustar el laudo a los casos individuales.*