JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* SINDICATO DE OBREROS UNIDOS DEL SUR DE PUERTO RICO, y su UNIÓN LOCAL NÚM. 933, demandados.

*Número:* JRT-64-17      *Resuelto:* 16 de marzo de 1965

*J. B. Fernández Badillo, Procurador General, Luis M. Rivera Pérez* y *Marta Ramírez de Vera,* abogados de la peticionaria; *Santiago C. Soler Favale,* abogado de los demandados.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Solicita la Junta de Relaciones del Trabajo de Puerto Rico, al amparo del Art. 9 (2) (c) de la Ley de Relaciones del Trabajo de Puerto Rico (29 L.P.R.A. sec. 70 (2) (c) ), ([1]) que

---

([1]) Dicha disposición lee así:

"A los fines de promover la negociación colectiva, la Junta podrá, en el ejercicio de su discreción, ayudar a poner en vigor laudos de arbitraje emitidos por organismos competentes de arbitraje, bien designados de acuerdo con cualquier convenio colectivo firmado por un patrono y una organización obrera, o en virtud de cualquier acuerdo firmado por una organización obrera y un patrono. Después de emitido un laudo de arbitraje, la Junta, a solicitud de cualquiera de las partes en el procedimiento

ordenemos a las Uniones demandadas a cumplir con el laudo de arbitraje emitido por el árbitro Félix R. Aponte Roque, en 30 de septiembre de 1963.

La petición de la referida Junta se basa en los hechos que relacionamos a continuación:

En 17 de enero de 1962 las demandadas y la Ponce Candy Industries negociaron un convenio colectivo de trabajo con vigencia hasta el 10 de enero de 1964.

Ante el Comité de Quejas y Agravios—cumpliendo así con las disposiciones del Art. VI del referido convenio colectivo—fue radicada por la Unión Local Núm. 933 una querella consistente en reclamación de salarios [2] en la que se hacía constar que el patrono "ni cumplió con el artículo V del Convenio Colectivo vigente al negarle oportunidad a los trabajadores cubiertos por el convenio a trabajar la jornada semanal comprendida de lunes a viernes de 40 horas". El Art. V del referido convenio colectivo dispone que: "La jornada regular de trabajo constará de no más de ocho (8) horas diarias. Toda hora trabajada en exceso de 8 (ocho) horas en cualquier día será considerada como extra y se pagará a razón de doble tiempo. *La jornada semanal comprendida de lunes a viernes será de 40 (cuarenta horas).* Todo trabajo a realizarse en el día del sábado se pagará a tiempo y medio". (Énfasis nuestro.)

Al no lograrse un acuerdo entre los representantes de ambas partes ante el Comité de Quejas y Agravios, la Unión

---

de arbitraje, podrá dar su consejo o podrá si fuere requerida para ello, a nombre de la parte que lo solicite, entablar acción legal adecuada ante la Corte Suprema de Puerto Rico para que se ponga en vigor el laudo de arbitraje."

[2] No se nos ha puesto en posición de determinar si la cláusula VI sobre Arbitraje del convenio colectivo ordena llevar al Comité de Ajuste *todas* las querellas o reclamaciones que puedan surgir en relación con las disposiciones del convenio colectivo. Así que partimos de la base, al considerar el caso ante nos, que se puede arbitrar esta reclamación de garantía de horas de trabajo a base de la cual los obreros en cuestión tendrían derecho a paga por 40 horas semanales irrespectivamente de si las trabajaren o no en cualquier semana.

solicitó el nombramiento de un árbitro. El Negociado de Conciliación y Arbitraje designó a Félix R. Aponte Roque, quien fue aceptado por ambas partes.

El siguiente acuerdo de sumisión, suscrito por ambas partes, fue sometido al árbitro. (³)

"Determinar si al amparo del Art. V del vigente convenio colectivo se le brindó o no oportunidad a los trabajadores para trabajar la jornada semanal de lunes a viernes y devengar el jornal por dichas 40 horas de trabajo. En caso de que se determine que no se le brindó la oportunidad de dicha jornada de trabajo, se provea la compensación dejada de percibir hasta completar la jornada de trabajo de 40 horas a todos los obreros por las semanas en que no trabajaron las 40 horas."

Según surge del Laudo de Arbitraje, rendido el 30 de diciembre de 1963, en opinión del árbitro, quien tiene la razón es el representante de la compañía. A esos efectos, dice el árbitro:

"En el alegato de la compañía se explica, sin lugar a dudas, que la jornada de trabajo semanal comprendida de lunes a viernes no constituye una garantía de trabajo de 40 horas."

Continúa exponiendo el árbitro en el mismo escrito y específicamente en la Decisión, lo siguiente:

"Se determina que al amparo del Art. V del vigente convenio entre la Unión y la Compañía se le brindó oportunidad a los empleados de trabajar la jornada semanal de lunes a viernes y devengar el jornal por dichas 40 horas de trabajo *todas las veces que ha habido suficiente trabajo disponible.*" (Énfasis nuestro.)

En una demanda sobre Impugnación de Laudo de Arbitraje, radicada en el Tribunal Superior, Sala de Guayama, el 24 de septiembre de 1964, la Unión querellante aduce: ". . . que [el laudo] no resuelve la verdadera controversia que le

---

(³) En la vista de arbitraje, celebrada el 15 de noviembre de 1963 en las oficinas de la Ponce Candy Industries, las partes estipularon someter el caso al árbitro a través de alegatos simultáneos y sin réplica a éstos.

Las partes acordaron no limitarle el tiempo al árbitro y aceptaron que la decisión del árbitro sería final y obligatoria.

fue sometida al árbitro, y por el contrario, resuelve y analiza una cuestión que no le fue sometida por las partes . . . ." Y se expone, además, en la demanda que "el laudo emitido en el presente caso es nulo ya que se actuó sin jurisdicción por no conferirse al árbitro autoridad en el convenio de sumisión para resolver lo que resuelve el laudo de arbitraje." ·

En 18 de diciembre de 1964 dictamos dos resoluciones, una ordenando a la demandada a mostrar causa, si tuviere, por la que no debía dictarse el decreto solicitado y en la otra ordenando al Tribunal Superior, Sala de Guayama, la paralización de los procedimientos a base de lo resuelto en *J.R.T.* v. *A.M.A.*, 91 D.P.R. 500 (1964). ·

En el escrito sobre Mostración de Causa, radicado por las Uniones demandadas el 24 de diciembre de 1964, en el apartado 3, se sostiene que este Tribunal no debe dictar el decreto solicitado por la peticionaria por el siguiente fundamento:

"Porque la parte demandada no tiene obligación de acatar el laudo de arbitraje y éste no debe ser puesto en vigor debido a que el mismo fue dictado sin jurisdicción y no resuelve la verdadera cuestión de controversia que fuera sometida para arbitraje por lo que dicho laudo es nulo en derecho. (Véase caso Junta de Relaciones del Trabajo v. N.Y. & P.R. SS Co., 1949, 69 D.P.R. 782)."

En su alegato en Apoyo de Escrito sobre Mostración de Causa se amplía el apuntamiento precedente y se dice que en el acuerdo de sumisión, se dio por cierto que la jornada semanal de trabajo era de lunes a viernes y por cuarenta (40) horas de trabajo; que lo único que se le sometió al árbitro fue si los obreros tuvieron o no la oportunidad de trabajar dicha jornada semanal, y, en caso negativo, que se proveyera la compensación dejada de recibir; y que ante esa situación el árbitro resolvió que el Art. V del convenio colectivo no constituía una garantía de trabajo y que se le brindó oportunidad a los empleados a trabajar la jornada semanal todas las veces que ha habido suficiente trabajo disponible;

que en ninguna parte del acuerdo de sumisión se somete a la consideración del árbitro, ni se le faculta para que determine la controversia que le fue sometida, a base de si existía o no suficiente trabajo disponible; que "el acuerdo de sumisión no faculta al árbitro a interpretar como cuestión de derecho, el Convenio Colectivo habido entre las partes y que por el contrario, surge de los términos de la sumisión que la jornada semanal de cuarenta (40) horas es compulsoria y mandatoria."

La peticionaria sostiene que el laudo carece de las causas de nulidad enumeradas en *N.Y. & P.R. S/S Co.*, supra, y que por ende debe ser puesto en vigor por este Tribunal. Al efecto alega que:

1.—"A través del convenio colectivo y del acuerdo de sumisión las partes 'definieron el alcance del mandato, o la jurisdicción conferida al árbitro para emitir el. laudo'.

2.—" . . . no se le condicionó expresamente al árbitro su autoridad en cuanto al criterio o interpretación de la sumisión que debía aplicar al resolver la controversia sometídale."

3.—". . . el árbitro no podía resolver la sumisión sin formar juicio sobre la frase 'jornada semanal' dado que: ésta estaba contenida en la sumisión y ni el convenio, la sumisión, o la prueba sometida por las partes en el procedimiento de arbitraje evidencia que las partes estuvieron de acuerdo sobre el significado del dicho término. [4]

4.—"La peticionaria, deduce de todo lo anterior, que los demandados están impedidos (estoppel) de alegar en este momento que no autorizaron al árbitro a interpretar el término 'jornada semanal' y que el árbitro utilizó un criterio que a base de la prueba presentada y de la jurisdicción conferídale . . . podía utilizar, el árbitro no resolvió materia alguna ajena a la sumisión de las partes." [5]

[4] Arguye la Junta que la argumentación o alegato de cada parte respecto al caso evidencia que la controversia existente entre sí, y lo que provocó el procedimiento de arbitraje que dio lugar al laudo, fue precisamente el referido término según el Art. V del convenio.

[5] Expresa la Junta "que al hacer la conclusión que hizo, el árbitro no podía, según la letra de la sumisión, hacer determinación algunà sobre compensación para los empleados hasta completar cuarenta horas semanales de trabajo."

A los fines de considerar y resolver la controversia en este caso es necesario resumir y aplicar la doctrina que en torno al concepto y mecanismo—dinámica—del arbitraje de controversias obrero-patronales, hemos establecido y reiterado en varios casos que citamos a continuación:

1.—La radicación ante esta Corte de una petición para poner en vigor un laudo de arbitraje rendido a virtud de un convenio colectivo que el patrono [o la Unión] se comprometió a aceptar y no aceptó es cuestión que la Legislatura dejó a la discreción de la Junta de Relaciones del Trabajo. Una vez que la Junta toma la decisión administrativa de radicar tal pleito, esta Corte no sustituirá sus puntos de vista por los de la Junta en relación con tal decisión. *Junta de Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.*, supra, pág. 797.

2.—Un laudo de arbitraje rendido en virtud de un convenio colectivo que tanto el patrono como sus empleados han convenido en aceptar, no es ni un contrato ni una sentencia. Empero disfruta de la naturaleza de ambos. Ibid. pág. 800.

3.—Un laudo basado en una sumisión voluntaria sólo puede ser impugnado por:

    a) fraude

    b) conducta impropia

    c) falta de debido procedimiento

en la celebración de la vista

    d) violación de la política pública

    e) falta de jurisdicción

    f) laudo no resuelve todas las cuestiones en controversia que se sometieron. Ibid. pág. 800.

En ausencia de alguno de esos elementos, este Tribunal carece de autoridad para anular un laudo de arbitraje por meros errores de criterio, ya sean éstos en cuanto a la ley o en cuanto a los hechos.([6]) *J.R.T.* v. *Cooperativa Cafeteros*, 89 D.P.R. 498 (1963); *Junta de Relaciones del Trabajo* v. *Orange Crush of Puerto Rico*, 80 D.P.R. 292 (1958); *Junta de Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.*, supra, pág. 800.

---

([6]) En *Junta Relaciones del Trabajo* v. *Cía. Popular*, 69 D.P.R. 775 (1949), se interpreta una situación surgida bajo un acuerdo de arbitraje a la luz de los incisos (b) y (c) del punto 3, *supra*.

4.—Un patrono y sus empleados que en un convenio colectivo hayan convenido en aceptar laudos de arbitraje rendidos a virtud de ese convenio, sustituyen al árbitro por las cortes para la determinación de todas las cuestiones de hecho y de derecho sustantivo, renunciando así sus derechos a litigar ante los tribunales las cuestiones propiamente sometidas a arbitraje. En tales circunstancias no hay manera alguna en derecho por la cual las cortes puedan relevar a las partes de su compromiso. *López* v. *Destilería Serrallés, Inc.*, 90 D.P.R. 245 (1964) ; *J.R.T.* v. *Caribbean Container Co.*, 89 D.P.R. 742 (1964) ; *Pérez* v. *Autoridad de Fuentes Fluviales*, 87 D.P.R. 118 (1963) ; *Junta Rel. Trabajo* v. *Valencia Baxt*, 86 D.P.R. 282 (1962) ; *Rivera Adorno* v. *Autoridad de Tierras*, 83 D.P.R. 258 (1961) ; *Junta de Relaciones del Trabajo* v. *Soc. Mario Mercado e Hijos*, 74 D.P.R. 403 (1953) ; *Junta de Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.*, supra.

5.—Es tan sólo cuando el convenio colectivo, la sumisión a arbitraje, o un estatuto proveen que el Comité de Arbitraje deberá decidir de acuerdo a derecho, que los árbitros deben seguir reglas de derecho y rendir sus laudos a tenor con doctrinas legales prevalecientes. Si guardan silencio en tal sentido, los árbitros pueden declarar entonces cuál es la ley, no estando el laudo así rendido sujeto a anulación a causa de errores de derecho. *J.R.T.* v. *Cooperativa Cafeteros*, supra. *Pérez* v. *Autoridad de Fuentes Fluviales*, supra; *Junta* v. *Orange Crush of P.R.*, supra; *Junta* v. *N.Y. & P.R. S/S Co.*, supra.

6.—Cuando ni el convenio colectivo ni el acuerdo de sumisión a arbitraje limitan los poderes del Comité de Arbitraje y por el contrario le confieren a dicho Comité poderes ilimitados, y su laudo se hace final y obligatorio, esta corte, en procedimiento para hacer cumplir el laudo arbitral, no puede negarse a ponerlo en vigor porque el Comité cometiera supuestos errores de derecho sustantivo. *Junta de Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.*, supra.

7.—Cuando se somete una cuestión a arbitraje de acuerdo con un convenio colectivo disponiendo que el laudo sería final y obligatorio, a menos que las partes lo acuerden, el Comité de Arbitraje no determina su propia jurisdicción. No son los árbitros y sí las cortes las que deben interpretar el convenio de sumisión a arbitraje con el fin de determinar qué cuestiones fueron sometidas a arbitraje por las partes para evitar la resolución de cuestiones no sometidas a arbitraje. Ibid, pág. 803.

8.—El hecho de que un laudo de arbitraje sea nulo en parte, necesariamente no lo invalida en su totalidad. En tal caso puede la parte válida ponerse en vigor, siempre que las varias disposiciones del laudo puedan subsistir por sí solas. Ibid, pág. 806.

9.—Toda vez que un laudo de arbitraje que es final y obligatorio para las partes pone fin a las controversias entre dichas partes sin intervención de las cortes excepto para ponerlo en vigor, tal laudo arbitral debe por sí solo, resolver definitivamente todas las cuestiones sometidas, sin necesidad de modificación o aclaración alguna, por las cortes. Ibid, págs. 806–807.

10.—El hecho de que se tengan que hacer unos sencillos cálculos matemáticos siguiendo una fórmula acordada por las partes en el convenio no impide que este tribunal ordene el cumplimiento del laudo que es completo y donde el árbitro se ciñó a resolver la cuestión que le fue sometida. *J.R.T.* v. *Cross Const. Corp.*, 89 D.P.R. 763 (1964).

11.—Un patrono o una unión que bajo un convenio colectivo voluntariamente hayan convenido en arbitrar sus diferencias y en que el laudo sea final y obligatorio, no pueden relitigar en corte las cuestiones resueltas por los árbitros. En ese caso el deber de la corte es dejar el laudo tal cual lo encuentra y hacer que las partes lo cumplan mas no interpretarlo. *Junta de Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.*, supra. En el caso de *López* v. *Destilería Serrallés, Inc.*, supra, se reitera esta regla y se añade lo siguiente: "Corresponde añadir que la misma regla cubre a los miembros de la Unión, de otra forma sería ilusoria la justicia que dicha regla intenta hacer".

12.—La sumisión voluntaria a arbitraje de una controversia por un patrono y una unión bajo los términos expresos de un convenio colectivo, obliga a un obrero miembro de una unión que personalmente se oponga a la sumisión de dicha controversia. *Rivera Adorno* v. *Autoridad de Tierras*, supra.

13.—Los acuerdos de arbitraje están revestidos de interés público. *J.R.T.* v. *Caribbean Container Co.*, supra; *Pérez* v. *Autoridad de Fuentes Fluviales*, supra.

14.—Los acuerdos de arbitraje deben hacerse cumplir estrictamente si la sumisión es clara y libre de ambigüedad. Cf. *J.R.T.* v. *Executive House, Inc.*, 91 D.P.R. 798 (1965) ; *Junta Rel. Trabajo* v. *Valencia Baxt*, supra.

15.—No existiendo una prohibición expresa tiene poder el árbitro para modificar la pena impuesta por el patrono cuando

encontrare que ésta es sumamente severa y drástica. *Junta* v. *Cooperativa Cafeteros de P.R.*, supra. ([7])

Considerado lo expuesto, concluimos que la peticionaria tiene razón y por lo tanto debemos ordenar el cumplimiento por las Uniones demandadas del laudo de arbitraje en cuestión. A continuación expresamos los fundamentos en que basamos este criterio.

La controversia que motiva esta causa se inicia con una querella de la Unión demandada ante el Comité de Quejas y Agravios creado por el referido convenio, al efecto de que el patrono le negó a los trabajadores cubiertos por el convenio la oportunidad de trabajar 40 horas semanales y que se le compensara a dichos obreros por las semanas en que no trabajaron 40 horas. Esto, en efecto, implicaba que la Unión entendía que el Art. V del convenio constituía una garantía de 40 horas de trabajo por semana. El patrono entendía que no y al no ponerse de acuerdo en cuanto a esta cuestión, convinieron someter la controversia a la decisión final de un árbitro, cuya selección fue aceptada por las partes. Es necesario, por lo tanto, que se tenga la naturaleza de esta controversia muy en mente al considerar la redacción poco precisa y no tan clara como fuera deseable, de la sumisión. Nótese que al árbitro se le exige que determine si *"al amparo del art. V del vigente Convenio Colectivo* se le brindó o no la oportunidad a los trabajadores de trabajar la jornada semanal de lunes a viernes y devengar jornal por 40 horas". (Énfasis nuestro.) A esos fines tenía el árbitro necesariamente que determinar si dicho Art. V establecía una garantía de 40 horas de trabajo por semana. En su laudo convino con el patrono que la disposición en cuestión no constituye tal garantía; que en otras cláusulas del convenio se proveen

---

([7]) Véanse, además, los siguientes casos: *J.R.T.* v. *P.R. Telephone Co.*, 91 D.P.R. 909 (1965); *Junta Rel. Trabajo* v. *Orange Crush*, 86 D.P.R. 652 (1962); *Junta* v. *Corona Brewing Corp.*, 83 D.P.R. 40 (1961); *Junta* v. *Long Const. Co.*, 73 D.P.R. 252 (1952); *Junta* v. *Escambrón Beach Club*, 70 D.P.R. 46 (1949); *Junta* v. *Eastern Sugar*, 69 D.P.R. 818 (1949).

ciertas y distintas garantías de trabajo. Habiendo resuelto el árbitro que al amparo del Art. V no se había provisto tal garantía, debía éste hacer una determinación sobre compensación dejada de percibir. La hizo en el sentido de que los trabajadores tuvieron la oportunidad "de devengar el jornal por dichas 40 horas de trabajo todas las veces que ha habido suficiente trabajo disponible". Como dice el Procurador General ". . . el árbitro no podía resolver la sumisión sin formar juicio sobre la frase 'jornada semanal' dado que: ésta estaba contenida en la sumisión y ni el convenio, la sumisión o la prueba sometida por las partes en el procedimiento de arbitraje evidencian que las partes estuvieron de acuerdo sobre el significado del dicho término. Por el contrario la argumentación o alegato de cada parte respecto al caso evidencia que la controversia existente entre sí, y lo que provocó el procedimiento de arbitraje que dio lugar al laudo, fue precisamente el referido término según el Artículo V del convenio entonces vigente."

La posición de la Unión demandada al efecto de que la sumisión se limitaba a determinar si los obreros tuvieron o no oportunidad de trabajar la jornada semanal de 40 horas y si no se les dio, que se proveyera la compensación dejada de percibir, en realidad, hace caso omiso de la naturaleza de la controversia que dio lugar al arbitraje o en efecto pretende que, través de una sumisión a arbitraje redactada en términos imprecisos y vagos, el patrono ha aceptado la contención de la Unión en el sentido de que el Art. V del convenio provee una garantía de 40 horas de trabajo por semana. De estar la Unión en lo cierto, la sumisión de por sí resolvía la controversia en favor de la Unión, el arbitraje resultaba innecesario e inútil y la sumisión en realidad constituía una enmienda al convenio para incluir en el mismo la garantía de 40 horas semanales que originalmente no se convino. Tal pretensión es claramente inaceptable por ilógica y absurda.

Es forzoso concluir, por lo tanto, que en este caso el árbitro resolvió toda la controversia que le fue sometida para arbitraje y no una cosa distinta a la que le fue sometida por las partes. No se ha establecido en este caso, ni puede impugnarse el laudo en cuestión por razón de fraude, conducta impropia, falla en el procedimiento en la celebración de la vista, violación de política pública o falta de jurisdición. Por la tanto, no debemos intervenir con dicho laudo en forma alguna excepto para hacerlo cumplir.

*En tal virtud, se dictará sentencia ordenando a la Unión demandada que cumpla con el laudo emitido en 30 de diciembre de 1963, por el árbitro Félix R. Aponte Roque.*