El Juez Asociado Sr. Blanco Lugo no intervino.

JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* CORONA BREWING CORPORATION, recurrida.

Número 56.

*Sometido:* 3 de abril de 1961. *Resuelto:* 19 de junio de 1961.

*J. B. Fernández Badillo, Secretario de Justicia, Edgar S. Belaval, Procurador Auxiliar* y *Ramón Acevedo Oliveras* y *Rafael M. Buscaglia, Jr.,* abogados de la peticionaria; *Beverley, Castro & López Baralt* y *Rafael Rodríguez Lebrón,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El día 20 de mayo de 1955, la Corona Brewing Corporation y otras compañías firmaron con la Unión Obreros Unidos de la Industria Cervecera y Bebidas Refrescantes y Ramas Anexas de Puerto Rico, un convenio colectivo, en cuyo artículo XVI se dispuso que: "Un trabajador que sea empleado por cualquiera de las Compañías para sustituir empleados regulares debido a ausencia de éstos, hasta tanto no haya trabajado por cuatro meses consecutivos no tendrá derecho a los siguientes beneficios provistos en este convenio: compensación de veintiún días por despido por falta de taller" . . .

En el convenio se dispuso además el establecimiento de Comités de Quejas y Agravios, que en caso de empate, se convertiría en un Comité de Arbitraje mediante la designación de un séptimo miembro por ambas partes y si éstas no se pusieran de acuerdo mediante designación del Secretario del Trabajo, para dirimir las controversias que surgieran entre patronos y empleados, sobre condiciones de trabajo, interpretación de las disposiciones del convenio y violaciones del mismo. Dichos comités le darían al obrero y a las com-

pañías la oportunidad de explicar y probar sus respectivos puntos de vista, debiendo resolver la querella a más tardar dentro de quince días de ocurrida la queja. En caso de que el Comité de Quejas y Agravios, o el Comité de Arbitraje resolviere que el trabajador agraviado había sido suspendido o despedido sin causa justificada, dichos Comités tendrían facultad para ordenar la reposición del trabajador con paga (*back pay*), disponiéndose, sin embargo, que si por negligencia de la Unión se tardase el Comité de Quejas y Agravios o el Comité de Arbitraje más de los quince días anteriormente provistos en resolver la querella, el tiempo en exceso de esos quince días no le serían pagados al obrero al computarle la paga atrasada (*back pay*).

En septiembre de 1955 la Corona Brewing Corporation despidió un grupo de empleados sustitutos sin pagarles la compensación de veintiún días fijada en el convenio colectivo, alegando que los cuatro meses consecutivos que le darían derecho a los veintiún días de compensación por despido, establecido en el artículo XVI del convenio colectivo, debían entenderse cuatro meses de cuatro semanas de cuarenta y ocho horas cada semana. Parece que el Comité de Quejas y Agravios no se pudo poner de acuerdo sobre la compensación adeudada a los empleados despedidos y el día 5 de abril de 1956 el caso le fue sometido al séptimo miembro designado por la Secretaría del Trabajo. Este rindió un laudo el 10 de julio de 1956 ordenándole a la recurrida pagar la compensación correspondiente. La recurrida se negó a dar cumplimiento al laudo y la Junta de Relaciones del Trabajo, de acuerdo con la facultad que le concede el artículo 9 de la Ley número 130 de 8 de mayo de 1945—29 L.P.R.A. 411, sección 70—solicitó de este Tribunal poner en vigor dicho laudo.

La recurrida alega ante nos, que ella no está obligada a cumplir dicho laudo porque el mismo (1) fue rendido fuera del término provisto en la sumisión contenida en el convenio colectivo y (2) porque dicho laudo, en sus efectos prácticos,

equivale a una modificación de los términos del convenio colectivo, declaración que el árbitro no puede hacer según la cláusula de sumisión contenida en dicho convenio.

 El artículo 29 de nuestra Ley General de Arbitraje—Ley número 376 de 8 de mayo de 1951 para autorizar la celebración de convenios de arbitraje comercial—excluye de sus disposiciones "los convenios de arbitraje entre patronos y empleados, los cuales continuarán rigiéndose por la Ley de Relaciones del Trabajo de Puerto Rico y por cualquier otra ley que se apruebe para regular el arbitraje de los problemas obreros patronales". El artículo 8 (*f*) de nuestra Ley especial de arbitraje obrero-patronal—Ley número 130 de 8 de mayo de 1945 conocida como Ley de Relaciones del Trabajo de Puerto Rico—declara práctica ilícita de trabajo aquélla que "viole los términos de un convenio colectivo, incluyendo un acuerdo en el que se comprometa a aceptar un laudo de arbitraje, esté o no dicho acuerdo incluido en los términos de un convenio colectivo" . . . y el artículo 9 (*c*) de la misma Ley dispone: "a los fines de promover la negociación colectiva, la Junta podrá, en el ejercicio de su discreción, ayudar a poner en vigor laudos de arbitraje emitidos por organismos competentes de arbitraje, bien designados de acuerdo con cualquier convenio colectivo firmado por un patrono y una organización obrera, o en virtud de cualquier acuerdo firmado por una organización obrera y un patrono. Después de emitido un laudo de arbitraje, la Junta, a solicitud de cualquiera de las partes en el procedimiento de arbitraje, podrá dar su consejo o podrá si fuere requerida para ello, a nombre de la parte que lo solicite, entablar acción legal adecuada ante la Corte Suprema de Puerto Rico para que se ponga en vigor el laudo de arbitraje".

El argumento principal de la recurrida, en cuanto al primer punto de su oposición, es que habiéndosele sometido al árbitro, la cuestión de la compensación de despido por falta de taller para los empleados sustitutos, el día 5 de abril

de 1956, dicho árbitro sólo tenía quince días a contar desde esa fecha para rendir su laudo y habiéndose rendido el laudo el 10 de julio de 1956, el mismo resulta nulo.

Como hemos visto, nuestra Ley de Relaciones del Trabajo no establece un término fijo para rendir el laudo de arbitraje, dejándose dicho término abierto a convención de las partes. En el convenio colectivo firmado entre las partes, el término de quince días se cuenta desde que ocurre la queja y no desde que el caso queda sometido al árbitro. Como se trata de una compensación por retiro de empleados sustitutos que cubren las vacaciones de los empleados regulares no se produce ninguna situación de pago retroactivo, y por lo tanto, la disposición del convenio colectivo que se refiere al pago retroactivo en exceso de los quince días, tampoco es aplicable.

Ahora bien, en este caso, las partes prorrogaron tácitamente el término de adjudicación de la controversia, puesto que sometieron la cuestión a arbitraje pasados los quince días desde que ocurrió la queja. Se ha interpretado que tal conducta equivale a una renuncia del término establecido en el convenio, de ser éste obligatorio y no directivo: *International Brotherhood* v. *Shapiro*, 82 A.2d 345 (O'Sullivan) (1951), cita precisa a la pág. 350; *Rexburg Investment Company* v. *Dahle & Eccles*, 211 Pac. 552 (McCarthy) (1922), cita precisa a la pág. 553; *Andrews* v. *Jordan et al.*, 172 S.E. 319 (Clarkson) (1934), cita precisa a la pág. 322; *Bolhuis Lumber & Mfg. Co.* v. *Brower*, 233 N.W. 415 (Sharpe); (1930), cita precisa a las págs. 416–417; *Bank of Coronado* v. *Shreve*, 196 Pac. 787, (Richards) (1921), cita precisa a la pág. 788.

■ El segundo fundamento de impugnación, en el sentido, que el laudo equivale a una modificación de los términos del convenio colectivo, carece de mérito. El árbitro lo que hizo fue interpretar las frases del convenio colectivo incluídas en la controversia y su conclusión resulta correcta: *Junta de*

*Relaciones del Trabajo* v. *Orange Crush of P. R.*, 80 D.P.R. 292 (Belaval) (1958), cita precisa a las págs. 295–296.

*Debe dictarse una sentencia ordenándole a la recurrida cumplir con el laudo rendido en el presente caso.*

Los Jueces Asociados Sres. Serrano Geyls y Rigau no intervinieron.