Junta de Relaciones del Trabajo de Puerto Rico, peticionaria, *v.* Orange Crush of Puerto Rico, Inc., demandada.

*Número:* 80      *Resuelto:* 30 de noviembre de 1962

*J. B. Fernández Badillo, Procurador General, José Orlando Grau, Rafael Buscaglia, Jr.,* e *Iván Báez Torres,* abogados de la peticionaria; *J. Alemañy Sosa,* abogado de la demandada.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: Un vendedor de la Orange Crush of Puerto Rico, Inc. estuvo ausente de su trabajo por enfermedad. El convenio colectivo que regía las relaciones entre los obreros y el patrono establecía el "derecho a doce (12) días con paga al año de licencia por enfermedad", los que podían acumularse. Disponía además el convenio que "[t]odo empleado que no utilice el tiempo aquí concedido para enfermedad, en todo o en parte, tendrá derecho a un bono equivalente al cincuenta por ciento (50%) del tiempo por enfermedad no consumido". En cuanto a salarios el convenio disponía que "[d]urante la vigencia de este convenio prevalecerán los siguientes salarios, comisiones y dietas: 1.— . . . 2.— . . . 3.—Vendedores: Los vendedores recibirán cuatro centavos y medio ($0.045) por cada caja llena vendida . . . y tres centavos ($0.03) por cada caja vacía que ellos entreguen . . ." Y disponía además que "[c]uando debido a fuerza mayor, en cualquier semana de trabajo regular de seis (6) días de trabajo el vendedor y el ayudante vendedor no ganen por lo menos veintinueve dólares ($29.00) y veinticuatro dólares, ($24.00) respectivamente, LA COMPAÑÍA *ajustará* los tipos de comisión arriba establecidos para que este personal obtenga veintinueve dólares ($29.00) el vendedor y veinticuatro dólares ($24.00) el ayudante".

Amparándose en esta última disposición el patrono al computarle la compensación por licencia por enfermedad lo hizo a base de un jornal de $29.00 semanales, sin tomar en cuenta lo verdaderamente recibido por el obrero semanalmente a base de la cláusula que establece las comisiones. [1]

Surgió pues, una controversia entre el patrono y la unión en cuanto a la interpretación del convenio y se sometió a arbitraje la cuestión de "[d]eterminar si al pagarle la licencia por enfermedad al obrero Reyes Rivera hay o no que

tomar en consideración las comisiones devengadas de acuerdo al convenio y ley". La persona nombrada para dirimir la controversia falló en el sentido de que había que tomar en consideración las comisiones devengadas. Refiriéndose a las disposiciones que antes transcribimos sobre salarios, sostuvo que: "Estas disposiciones claramente establecen el tipo de salario para los vendedores a base de comisiones por cajas llenas vendidas y por cajas vacías completas entregadas, o a base de $29 semanales, cualquiera de las dos que fuere mayor. El hecho de establecer un mínimo semanal de $29 no significa en forma alguna que ése sea su salario semanal. Esto sólo significa una garantía mínima de ingreso semanal para los vendedores y sólo beneficia a aquéllos que por una u otra razón sus comisiones no llegan a esa suma. Aquellos vendedores cuyas comisiones excedan de $29 no son afectados por dicha disposición. Para ellos es como si dicha disposición no existiera". ▪

Es correcta tal interpretación. El salario fue establecido a base de comisiones. El límite mínimo de $29 es una garantía fija. Era pues claro que la compensación por licencia por enfermedad había que computarla a base de lo que recibió el obrero semanalmente, bien fuera el límite mínimo de $29 o una cantidad mayor a base de las comisiones establecidas en el convenio. Y la Ley de Salario Mínimo dispone que "salario" incluye toda clase de compensación —29 L.P.R.A. sec. 246h (Supl. 1961)—.

Ahora, el patrono ataca el laudo por otros fundamentos. Sostiene que el Comité de Quejas y Agravios establecido por el convenio se constituyó con sólo tres miembros cuando de acuerdo con el convenio debe tener cinco; que "el laudo en este caso es la opinión de uno de los cinco (5) miembros del Comité de Quejas y Agravios y no la opinión de la mayoría de los miembros de dicho comité". Sostiene además que es nulo el laudo ya que el árbitro resolvió la querella después de vencido el término fijado en el convenio para ello y que es nula la sumisión. ▪

Consideremos en primer término la cuestión de que a pesar de que el convenio establece un Comité de Quejas y Agravios de 5 miembros se le sometió a un comité de 3. Se basa el patrono en que "en el record taquigráfico expedido por el taquígrafo Eulogio Bermudez Vélez y enviado a la querellada por don Adolfo Collazo . . . se hace constar que en la vista celebrada las partes aceptaron someter a la consideración del tercer miembro (nombrado como tal por acuerdo de las partes) el siguiente acuerdo de sumisión". Pero lo cierto es que la cuestión se le sometió a un comité compuesto de dos representantes del Patrono, los señores Gabriel Borrás, Administrador de la Orange Crush y Antonio Medina, dos representantes de la Unión, los señores Adolfo Martínez y José Mercado y de un miembro imparcial el señor Oscar Lausell Ramos. Así lo demuestra la transcripción de la vista de arbitraje celebrada el martes 18 de octubre de 1960, en las oficinas de la Orange Crush of Puerto Rico, Inc. Evidentemente el taquígrafo al certificar lo acontecido usó el término "tercer miembro" en su acepción de "tercero" que según el diccionario de la Real Academia de la Lengua Española significa: "Que media entre dos o más personas para el ajuste o ejecución de una cosa buena o mala".

El Convenio en su apartado V.A. establece un Comité de Quejas y Agravios. Dispone así:

"A.—Habrá un Comité de Quejas y Agravios, compuesto de cinco (5) personas: dos (2) designadas por LA UNIÓN, dos (2) designadas por LA COMPAÑÍA, y la quinta que será un funcionario del Departamento del Trabajo designado por el Secretario del Trabajo, previa solicitud de las partes. Este Comité recibirá y resolverá por mayoría cualquier queja, disputa o controversia que pueda surgir entre las partes contratantes en este Convenio durante la vigencia del mismo, ya se refiera a las estipulaciones contenidas en este Convenio y a las interpretaciones y alcances que se le haya dado al mismo, o bien se relacione con el curso del trabajo o con la suspensión o despido de cualquier trabajador por parte de LA COMPAÑÍA."

Sostiene el patrono que el laudo es la opinión de uno de los cinco miembros del Comité de Quejas y Agravios y no la opinión de la mayoría de los miembros de dicho Comité. Los autos revelan que en la vista celebrada el 18 de octubre de 1960, la cuestión le fue sometida a la consideración de todos los cinco miembros del Comité. Los obreros, por su representante señor Martínez expusieron su criterio en detalle y el señor Borrás, Administrador de la Orange Crush expuso sus puntos de vista. Surgen de los autos que eran encontrados los criterios sustentados por una y otra parte. En la consideración del asunto en el Comité, el quinto miembro intervino preguntando a una y otra parte sobre las contenciones respectivas. Luego de discutirse extensamente el asunto en el Comité, el fallo del quinto miembro a favor de una u otra de las contenciones de hecho se convertía en un dictamen del Comité tres a dos. Es pertinente apuntar que cuando el patrono objetó el dictamen, en forma alguna protestó de que el mismo era el dictamen de un solo miembro del Comité. ▪

Se impugna la validez del laudo por haber sido rendido luego de haber vencido el término fijado en el convenio para la rendición de éstos. Es innecesario considerar esta cuestión pues el laudo es de tal naturaleza que no causa perjuicio a la parte perdidosa el que se haya dictado fuera del término establecido en el convenio, además de que no se requirió en ningún momento del Comité que lo rindiera dentro de los cinco días estipulados para ello. Véase *Junta Rel. Trabajo* **v.** *Corona Brewing Corp.*, 83 D.P.R. 40 (1961).

Se alega que la sumisión fue nula. Sostiene el patrono que estableciendo el convenio un Comité de cinco personas para dilucidar querellas como la aquí envuelta, era ilegal sometérselo a un solo miembro del Comité. Al discutir el segundo de los errores apuntados dispusimos del presente apuntamiento.

*La petición para que se ponga en vigor el laudo de arbitraje será declarada con lugar.*