JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO (a nombre y en representación de CARLOS LUIS ROSELLÓ FIGUEROA), peticionaria, *v.* PUERTO RICO TELEPHONE COMPANY, demandada.

*Número:* JRT-62-11     *Resuelto:* 11 de marzo de 1965

*J. B. Fernández Badillo, Procurador General, José Orlando Grau, J. F. Rodríguez Rivera, Luis M. Rivera Pérez, Celia J. Canales de González* y *Marta Ramírez de Vera,* abogados de la peticionaria; *Sifre & Ruiz Suria,* abogados de la demandada.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Carlos Luis Roselló trabajaba para la Puerto Rico Telephone Company. Fue despedido de su empleo alegándose por el patrono que había hurtado cierto equipo telefónico. Se querelló a la Unión. Ésta se dirigió al patrono y el caso fue sometido al Comité de Querellas tal como lo dispone el convenio colectivo.(¹) El Comité de Querellas compuesto de dos miembros representando al patrono y dos a la Unión no se puso de acuerdo. Siguiendo lo preceptuado en el inciso c) de la Sec. 4 del Art. XV designaron un quinto miembro ajeno a las partes. Se dictó un laudo ordenando a la Puerto Rico Telephone que repusiera en su empleo a Roselló y además que se le reembolsaran los salarios dejados de percibir desde su despido.

El patrono no cumplió con lo ordenado. La Junta de Relaciones del Trabajo instó el procedimiento para poner en

---

(¹)La Sec. 5 del Art. XV del Convenio Colectivo vigente a la fecha de la separación disponía:

"a) Si un empleado considera injusta su suspensión o separación, deberá presentar su querella a la Unión.

b) En caso de que la Unión también considere injusta la suspensión o separación del empleado, la Unión presentará una querella por escrito dentro de tres (3) días subsiguientes a la suspensión o notificación de separación del empleado, ante el Director de Relaciones Industriales de la Compañía.

c) La Compañía tendrá el derecho de llamar al Comité de Querellas a una reunión especial para resolver la querella."

vigor el laudo. La compañía telefónica expone las siguientes razones para no cumplir con lo ordenado:

1) El convenio colectivo había expirado cuando se celebró la vista ante el quinto miembro del Comité de Arbitraje.

2) El laudo no fue emitido por el organismo competente de arbitraje designado en el Art. XV, Sección 4 del Convenio Colectivo.

3) El patrono solicitó la celebración de una vista ante el comité de arbitraje luego de seleccioner al quinto miembro para someter su caso debidamente y la misma no se celebró.

4) El patrono no fue confrontado con cierta evidencia que consideró el quinto miembro al rendir su fallo.

5) El quinto miembro decidió la controversia exclusivamente basándose en la decisión del Tribunal Superior absolviendo a Roselló del delito imputado.

Consideremos las razones expuestas para determinar si se justifica la posición asumida por el patrono.

El convenio colectivo vigente a la fecha cuando ocurrieron los hechos expiró el 7 de mayo de 1962. El asunto le fue sometido al quinto miembro a fines de mayo cuando ya había expirado. En la reunión celebrada los representantes del patrono y de la Unión le hicieron entrega de toda la evidencia relativa al caso, así como de las minutas de las vistas celebradas anteriormente, en las cuales se discutió el caso de Roselló. La Junta amparándose en las determinaciones de un oficial examinador concluyó que en esa reunión "el quinto miembro hizo algunas preguntas a los componentes del comité reunidos en su oficina; recibió los documentos que ambas partes tuvieron a bien entregarle; inquirió de los presentes si tenían alguna objeción a la admisión de los referidos documentos . . . . [C]uando iba a dar por terminada la reunión uno de los representantes del patrono en el comité de querellas indicó al quinto miembro su deseo de que se celebrara una vista adicional antes de emitirse el laudo. El quinto miembro contestó que examinaría toda la prueba documental que las partes le habían entregado y, en caso de que lo creyera necesario, las

convocaría a una vista adicional." La cuestión sometida fue clara y sencilla. Si el patrono estuvo justificado en las circunstancias del presente caso al despedir a Roselló.

1. En este caso, vigente el convenio, se puso en movimiento el procedimiento establecido para someter al Comité de Querellas creado por el convenio, el asunto del despido de Roselló. Ya para expirar el convenio, el Comité de Querellas selecciona a una persona para que pase a formar parte del comité y se decida la cuestión en definitiva. Expirado el convenio todas las partes se reúnen con la persona seleccionada y discuten el caso.

▇▇▇ Es claro que era innecesario una sumisión por escrito para arbitrar la querella al amparo del convenio vigente. El patrono no cuestiona esta afirmación pero sostiene que como ya había expirado el convenio se necesitaba un acuerdo escrito para hacer la sumisión. No tiene razón. El procedimiento comenzó cuando estaba vigente el convenio. Todos los actos posteriores son una consecuencia de la maquinaria que se puso en movimiento cuando el asunto fue sometido al Comité de Querellas a petición de la Unión. La expiración del convenio no podía tener el efecto de terminar los procedimientos ya iniciados. Ver *Steelworkers* v. *Enterprise Corp.*, 363 U.S. 593 (1960) y *Junta Rel. del Trabajo* v. *Soc. Mario Mercado e Hijos*, 74 D.P.R. 403 (1953).

2. El laudo emitido sólo está firmado por el quinto miembro. El patrono lo impugna por esa razón. Sostiene que el laudo debió haber sido emitido por el Comité de Querellas en pleno.

▇ Ya hemos apuntado que la controversia sometida era una sencilla. El quinto miembro celebró una reunión con los otros cuatro miembros del comité. Recibió la documentación que éstos habían considerado en sus reuniones anteriores y le preguntó a éstos sobre la cuestión sometida. A una petición para la celebración de otra reunión el quinto miembro manifestó que se celebraría si lo consideraba necesario. Como

apuntamos en *Junta Rel. Trabajo* v. *Orange Crush*, 86 D.P.R. 652 (1962), "En la consideración del asunto en el Comité, el quinto miembro intervino preguntando a una y otra parte sobre las contenciones respectivas. Luego de discutirse extensamente el asunto en el Comité, el fallo del quinto miembro a favor de una u otra de las contenciones de hecho se convertía en un dictamen del Comité tres a dos." Igual situación presentaba el presente caso. Los representantes de la Unión entendían que el empleado debía ser restituido. Los del patrono sostenían lo contrario. La decisión del quinto miembro en uno u otro sentido resolvía definitivamente la controversia. No había margen para concesiones. O se restituía al empleado o se mantenía la decisión del patrono. El voto del quinto miembro, al igual que en *Orange Crush*, tenía como resultado una decisión por mayoría.

3. En cuanto a la solicitud por parte de la representación patronal de una vista ante el Comité de Querellas, surge que el quinto miembro hizo claro cuando se hizo tal solicitud que la celebraría si luego de considerar toda la documentación sometida lo creía necesario. Evidentemente entendió que no hacía falta una vista adicional.

4. Al emitir el laudo el quinto miembro hace referencia a una carta de un abogado dirigida al Presidente de la Unión informándole que Roselló había sido absuelto del delito que se le imputó como consecuencia de los hechos que dieron base a su despido. El patrono alega que no conocía de esa carta y que no fue confrontado con ella cuando el caso se consideró por el Comité de Querellas. Pero la carta sólo informaba de la absolución de Roselló y ciertamente el patrono tenía conocimiento de ese hecho. El oficial examinador, nombrado por la Junta, determinó que los representantes de la Unión mostraron la carta a los representantes del patrono antes de sometérsela al quinto miembro.

5. El patrono sostiene que "el quinto miembro decidió la controversia exclusivamente basándose en la decisión del Tri-

bunal Superior absolviendo a Roselló del delito imputado."
No es cierta la afirmación. El laudo considera la absolución
pero asimismo expone que:

" . . . aun haciendo abstracción del fallo del Tribunal, de los
autos no aparece evidencia alguna que puede preponderar en la
esfera civil de los hechos tendientes a demostrar que Carlos Luis
Roselló incurriese en falta alguna que vulnerase su integridad,
honestidad o confiabilidad pues aparece claro que Carlos Luis
Roselló era empleado de la compañía telefónica para la noche de
los hechos, que estaba en el turno correspondiente a la hora en
que penetró a los almacenes, y que estaba sirviendo y trabajando
para la compañía telefónica, en el momento en que fue al almacén
para obtener los materiales para hacer la reparación en la casa
del Sr. Lugo, con la previa y probada autorización del Testman,
Sr. Muñoz.

"Al suscribiente le parece muy curioso que el guardia
Enmanuelli a quien supuestamente trató de sobornar Carlos Luis
Roselló con un 'regalito' no declarara ante la Junta de cuatro
miembros que entendió originalmente en este caso. Todo lo que
se dice, que Enmanuelli dijo, resulta sencillamente por boca de
otros, y de referencia, a pesar de ser el guardia Enmanuelli un
testigo esencialísimo, que no pudo ser interrogado por la Junta
ni por las partes. No nos parece ilógico el que se rindan o hayan
rendido, servicios de emergencia de reparación de teléfonos en
horas de la noche; y nos parece irrazonable e injusto, que la
permanencia de los empleados que trabajan en reparación de los
teléfonos pueda depender del mero hacer o no hacer, una requisi-
ción, para dos a tres teléfonos. El récord demuestra que el Lcdo.
A. R. Barceló, Jr., ofreció a la compañía para su examen un
original de la requisición o copia de la requisición que hiciera
Carlos Luis Roselló para el material a que se contrae la querella
sobre la alegada 'antirreglamentaria' sustracción por parte de
Roselló, sin supuestamente haber llenado requisición al efecto.
Tal requisición aparece que se hizo. La compañía no destruyó
el impacto evidenciario de esa prueba, ni aparece haber negado
ni controvertido con éxito ese hecho. El suscribiente no cree que
bajo las circunstancias de este caso exista justificación alguna
por parte de la compañía para el despido. Tampoco la posición
sostenida ante la Junta por la compañía fue sincera al sostener

que el despido se debió a otros motivos, antes que a los hechos que le imputaron a Roselló en la acusación criminal, especialmente luego de haber empleado la compañía a los guardias del almacén de dicha compañía, en unión a otros funcionarios de la compañía, para imputarle un hurto criminal de teléfonos a Carlos Luis Roselló y despedirlo injustificadamente."

*La petición para que se ponga en vigor el laudo de arbitraje será declarada con lugar.*