UNITED STEELWORKERS OF AMERICA, AFL–CIO, LOCAL 6218, demandante y recurrida, *v.* PAULA SHOE CO., INC., GENTRY SHOE CO., INC., demandados y recurrentes.

Número: R-65-239        Resuelto: 24 de junio de 1966

662

*McConnell, Valdés & Kelley* y *Heber E. Lugo,* abogados de la recurrida; *Francisco Aponte Pérez,* abogado de las recurrentes.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Dos cuestiones se plantean en el presente recurso, a saber, (a) si el tribunal de instancia tenía jurisdicción para hacer

cumplir un laudo de arbitraje interpretando una cláusula de un convenio colectivo, y, (b) si dicha interpretación es aplicable a convenios subsiguientes.

Consideremos los hechos del caso. El Art. 10 del convenio suscrito por Paula Shoe Co., Inc., Gentry Shoe Co., Inc. (de aquí en adelante denominadas las querelladas), con la Unión de Trabajadores de Muelles y Ramas Anexas de Ponce, Puerto Rico, Local 1903 (AFL-CIO), conocida como UTM, en 12 de agosto de 1959, con retroactividad al 27 de abril de 1959 y con vigencia hasta el 31 de diciembre de dicho año, disponía que "La Compañía conviene que efectivo en 27 de abril de 1959, ella concederá un aumento de 5% sobre todos los tipos de salarios por pieza (*piece rates*) en efecto en 24 de abril de 1959 y un aumento de 5% a todos los empleados de la unidad contratante a quienes se les pague por hora". Luego las partes firmaron otro convenio para los años 1960–1962 que proveía que "La Compañía conviene que efectivo el 1ro. de enero de 1960, concederá un aumento de 5% sobre todos los tipos de salario por pieza en efecto el 1ro. de enero de 1960 y que se concederá un aumento de 5% a todos los empleados dentro de la unidad contratante a quienes se les paga por hora". El 18 de diciembre de 1962 las querelladas y la United Steelworkers of America (AFL-CIO) firmaron otro convenio colectivo retroactivo al 9 de julio de 1962 y con vigencia hasta el 9 de julio de 1964. Se proveyó en éste que la compañía había concedido otro aumento de 5% sobre los tipos de salarios por pieza, de manera que la fórmula en cuanto a tales tipos, desde julio 9 de 1962 era el tipo básico más 19%; que efectivo desde el primer día del segundo año de este contrato la compañía concedería un aumento adicional del 4% sobre todos los tipos básicos por pieza, de manera de llevar la fórmula en efecto al final el primer año del contrato al tipo básico más el 23%. Aumentos parecidos se convinieron en este contrato en cuanto a los obreros que recibían salario por hora en las designadas

"faenas sin incentivo". Por último, se suscribió un convenio colectivo el 16 de enero de 1965 retroactivo al 9 de julio de 1964 y con vigencia hasta el 9 de julio de 1966 en el cual la compañía convino en conceder un aumento de 4 1/2% en todos los tipos básicos por pieza, de manera de llevar la fórmula de estos tipos al básico más 27 1/2% desde el 9 de julio de 1964. Un aumento parecido también se convino para los empleados a quienes se les pagaba un salario por hora. En este mismo convenio la compañía concedió otro aumento de 4% de manera que el tipo de salario por pieza efectivo desde el 9 de julio de 1965 sería el tipo básico más 31 1/2%. Aumento similar se concedió a los obreros que recibían salario por hora.

El 15 de septiembre de 1960 las partes sometieron a arbitraje la siguiente cuestión:

"Determinar si la Compañía viene obligada a pagar a los obreros que trabajan por tarea, pero que no sacan suficiente tarea o taller en las cuarenta horas para cubrir el mínimo federal, el aumento de 5% que establece el convenio colectivo en su artículo 10 sobre el sadario mínimo federal de 59% por hora y $23.60 por 40 horas de trabajo a la semana."

En 7 de octubre de 1960 rindió el árbitro el siguiente laudo:

"Se determina que la Compañía viene obligada a pagar a los obreros que trabajan por tarea, pero que no sacan suficiente tarea o taller en las 40 horas para cubrir el mínimo federal, el aumento de 5% que establece el convenio colectivo en su artículo 10 sobre el salario mínimo federal de 59¢ por hora y $23.60 por 40 horas de trabajo a la semana".

Por considerar este laudo errado, la compañía solicitó vista ante el árbitro para discutir los errores que apuntaba pero éste notificó a la compañía que no podía reabrir el caso ya que la UTM se oponía. Como el patrono se negó a poner en efecto el laudo, recurrió la UTM a la Junta de Relaciones del Trabajo en 1ro. de febrero de 1961 en solicitud de que pusiera dicho laudo en vigor. El 27 de septiembre del mismo año la

Junta resolvió que "haciendo uso de esa discreción que le otorga el artículo 9(2)(c) de la Ley, considera que bajo las circunstancias en que se desarrolló la emisión de este laudo, no es aconsejable ayudarlo a poner en vigor".

En 20 de abril de 1965 acudió la querellante en este caso, United Steelworkers of America (AFL-CIO), Local 6218, en adelante designada como la querellante, ante el Tribunal Superior, Sala de San Juan, y en su querella alegó, en síntesis, que las querelladas no han dado cumplimiento al referido laudo y no han satisfecho a los obreros que trabajan por tarea los aumentos progresivos provistos en los convenios colectivos antes relacionados. Solicitaron sentencia por la suma que resulte del estudio de nóminas y récords de las querelladas, e igual cantidad en concepto de liquidación de daños y perjuicios, costas y una suma razonable en concepto de honorarios de abogado. Las querelladas solicitaron sentencia sumaria en 8 de julio de 1965 alegando que el tribunal carecía de jurisdicción para poner en vigor el laudo de arbitraje antes mencionado ya que lo que surge de la faz de la querella es una alegada comisión de una práctica ilícita del trabajo siendo la Junta de Relaciones del Trabajo el foro provisto por ley para entender en este asunto; además, que la querellante no es la UTM porque no es ni nunca fue parte del convenio colectivo que dio lugar al derecho a arbitrar y, por lo tanto, no podía solicitar poner en vigor el laudo en cuestión. Por su parte, la querellante solicitó sentencia sumaria interlocutoria en 21 de julio de 1965.

En su sentencia sumaria enmendada, dictada en 20 de octubre de 1965, concluyó el tribunal de instancia que:

"En cuanto al período comprendido entre el 27 de abril de 1959 y el 9 de julio de 1964 se declara sin lugar la moción de la parte querellada para que se dicte sentencia sumaria desestimando la querella. Aquella parte de la reclamación que se refiere a los servicios prestados con posterioridad al 9 de julio de 1964 debe someterse a arbitraje y por tanto en cuanto a esa parte se dicta sentencia desestimando la querella. Se declara sin lugar la

moción de la parte querellante solicitando se dicte sentencia sumaria interlocutoria."

No conforme la querellante, apunta en apoyo de su recurso ante nos que:

"(a) El Tribunal incidió en error al declarar sin lugar la moción sobre sentencia sumaria interlocutoria por el fundamento de que carecía de jurisdicción para ordenar el cumplimiento del laudo de arbitraje del 7 de octubre de 1960 al concluir que dicha facultad le estaba reservada exclusivamente a la Junta de Relaciones del Trabajo y al Tribunal Supremo al amparo del artículo 9(2)(c) de la Ley de Relaciones del Trabajo de Puerto Rico. La sentencia es contraria al derecho estatutario local y a la doctrina jurisprudencial establecida por el Tribunal Supremo de Puerto Rico en los casos *Junta de Relaciones del Trabajo* v. *New York & P.R. S.S. Co.,* 69 D.P.R. 782, 791 (1949); *Asociación de Guardianes* v. *Bull Lines,* 78 D.P.R. 714, 719–720 (1955).

"(b) El Tribunal erró al dejar de resolver que en acciones para el cumplimiento de laudos arbitrales emitidos a virtud de un convenio colectivo firmado por una empresa en el comercio interestadual, como lo son las aquí querelladas, la jurisdicción del tribunal local es concurrente con la del tribunal federal bajo la sección 301 de la Ley Taft-Hartley, conforme a la doctrina jurisprudencial establecida por el Tribunal Supremo de Puerto Rico en el caso *Puerto Rico Telephone Co.* v. *Junta,* 86 D.P.R. 382, 394 (1962), y por el Tribunal Supremo de los Estados Unidos en los casos *Charles Dowd Box Co.* v. *Courtney,* 368 U.S. 502, y *Smith* v. *Evening News Assn.,* 371 U.S. 195 (1962). Bajo dicha doctrina el foro local se ha abierto concurrentemente para acciones de cumplimiento de convenios colectivos incluyendo cumplimiento de laudos arbitrales.

"(c) El Tribunal cometió error al declarar sin lugar la moción sobre sentencia sumaria interlocutoria interpuesta por los querellantes rehusando poner en vigor el laudo de arbitraje, y al declarar con lugar la moción de sentencia sumaria de las querelladas desestimando la porción de la querella posterior al 9 de julio de 1964, y ordenando en su lugar, el arbitraje de la misma."

■ 1.—Debemos determinar, en primer lugar, si el laudo arbitral rendido en 7 de octubre de 1960 es válido y efectivo.

Arguyen las querelladas que no lo es porque el árbitro no consideró todo el acuerdo de sumisión, porque basó el laudo en un convenio incorrecto y porque su conclusión de que el convenio provee un aumento de 5% sobre el salario semanal a los obreros que trabajan por tarea constituye un error de hecho ya que el convenio claramente dispone que ese aumento se hará sobre el tipo de salario por pieza. No aparece del récord que el árbitro dejase de considerar todo el acuerdo de sumisión previamente transcrito ni que no hubiese tenido ante sí el texto correcto del convenio por el hecho de que no aparezca de su laudo que le diese consideración al artículo noveno del convenio. No hemos podido comprobar la existencia de ninguno de los motivos por los cuales un laudo puede ser impugnado, según lo expusimos en *Junta Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.*, 69 D.P.R. 782, 800 (1949). Ningún error de hecho o de derecho del árbitro es motivo de impugnación excepto que cuando se incluye una disposición en la sumisión al efecto de que el árbitro debe decidir de acuerdo a derecho éste debe seguir reglas de derecho y rendir su laudo a tenor con doctrinas legales prevalecientes. *J.R.T.* v. *Cooperativa Cafeteros*, 89 D.P.R. 498 (1963). De todos modos el árbitro no incurrió en el error de hecho que se le imputa, pues el alegado error en que se basa es más bien una expresión de su criterio interpretativo del primer convenio bajo consideración, es decir, que el aumento provisto en el convenio sobre todos los tipos de salario por pieza debe hacerse sobre el salario semanal de los obreros que reciben paga por pieza pero "que no sacan suficiente tarea o taller en las 40 horas para cubrir el mínimo federal". Carecemos, por lo tanto, de autoridad para anular el laudo arbitral en cuestión. *J.R.T.* v. *Sindicato Obreros Unidos*, 92 D.P.R. 60 (1965).

■ 2.—Se arguye que en este caso se trata de hacer cumplir un laudo arbitral y que es la Junta de Relaciones del Trabajo el organismo que tiene jurisdicción exclusiva para hacerlo y como se negó a ello, los tribunales carecen de juris-

dicción para conocer de casos como éste. No creemos que la situación sea ésta. La querella en este caso solicita que a los obreros afectados, es decir, a aquellos que no cubrían la tarea semanal y a quienes sólo se les igualó el salario mínimo federal, se le paguen las sumas que resulten del estudio de las nóminas y récord, a base de que los aumentos de salario que se le hicieron en los distintos convenios se calculen sobre la base del salario mínimo federal semanal. Se trata, pues, de un pleito privado para obligar a un patrono a cumplir con las disposiciones de un laudo. Como dijimos en *Junta Relaciones del Trabajo* v. *N.Y. & P.R. S/S. Co.*, supra, nada hay en nuestra ley que impida esta acción. *J.R.T.* v. *A.M.A.*, 91 D.P.R. 500 (1964); *Asociación de Guardianes* v. *Bull Line*, 78 D.P.R. 714, 719 (1955).

■ 3.—¿Procede que los aumentos de salarios convenidos en los convenios posteriores al primero que fue el que dio lugar al laudo arbitral en cuestión se determinen en la forma provista en dicho laudo que específicamente cubre el aumento convenido en el primer convenio? En otras palabras, ¿es la referida determinación arbitral obligatoria en cuanto a la forma y manera de calcular los aumentos de salario convenidos en los convenios subsiguientes? Creemos que no. Cuando se suscribió el segundo convenio, el modo de calcular el aumento de 5% sobre salario bajo el primer convenio, según el laudo arbitral dictaminado a la luz de lo dispuesto en el primer convenio, era el de aplicar ese 5% al salario mínimo federal semanal, irrespectivamente de si el obrero ganaba ese mínimo a base de piezas producidas por él durante la semana. El hecho de que el patrono (1) no estuviese conforme con el laudo, (2) hubiese tratado de cambiarlo y (3) no hubiese pagado los salarios de acuerdo con el mismo, no altera en forma alguna esta conclusión ya que hemos determinado que dicho laudo fue válidamente rendido y no se nos ha mostrado motivo legal alguno para impugnarlo. El segundo convenio dispone que se concede un aumento de 5% sobre los

tipos de salarios por pieza efectivo en 1ro. de enero de 1960, o sea, al expirar el primer convenio. ¿Eran esos tipos los que originalmente prevalecían cuando se suscribió el primer convenio? ¿O era el salario federal semanal más 5%, como determinó el árbitro, en los casos de obreros que no producían suficientes piezas en la semana de manera que su paga por lo menos alcanzase el salario mínimo federal? Ciertamente no podían ser los primeros. Tampoco podrían ser los segundos pues el árbitro no lo determinó así. No debe haber duda de que bajo el primer convenio dichos tipos son los que determinó el laudo arbitral. ¿Pero es que esta determinación es obligatoriamente el punto de partida para determinar el aumento concedido bajo el segundo convenio entre las mismas partes? ¿O es que, no habiéndose arbitrado el aumento bajo el segundo convenio, ni apareciendo del récord que cualquier disputa sobre este particular deba someterse a arbitraje, puede el tribunal determinar la forma y manera de calcular el aumento concedido en el segundo convenio? Creemos que el tribunal puede hacer tal determinación ya que el laudo no se hizo expresamente extensivo al segundo convenio ni es en derecho obligatoria en la interpretación de este último. Concluimos por lo tanto que a la luz de la clara disposición del segundo convenio, el aumento de 5% de este convenio debe calcularse sobre el tipo de salario por pieza prevaleciente al suscribirse el primer convenio aumentado dicho tipo en un 5% por el primer convenio, es decir, que el punto de partida para el segundo aumento es el 105% del tipo de salario por pieza prevaleciente al comienzo del primer convenio.

En cuanto a los convenios subsiguientes al segundo, los que se suscribieron por el patrono con una unión separada y distinta de la UTM, la situación es aun más clara. La forma de calcular el aumento determinado por el laudo en cuestión no es obligatoria, ni es determinante como punto de partida para calcular los aumentos concedidos en estos convenios. Nótese que en el tercer convenio se dispuso que el

aumento de 5% es "en adición al total de todos los aumentos sobre todos los tipos básicos de salario por pieza anteriormente concedidos, de manera que la fórmula con respecto a los tipos de salario por pieza, desde julio 9 (1962) es el básico más 19%". Esto se distingue del aumento concedido a los obreros que desempeñan trabajos pagados por hora, que fue de 5% sobre su salario. Para el segundo año de este convenio, se acordó un aumento de 4% de manera que "Este aumento también será adicional a todos los aumentos sobre los tipos básicos de salario por pieza en efecto en el último día del primer año de este contrato, de manera que la fórmula alcanzará al básico más 23%". Lo mismo se pactó en el último convenio excepto que los aumentos fueron de 4-1/2% el primer año y 4% el segundo, siendo la fórmula para calcular el aumento de 4–1/2% el tipo básico más 27–1/2%, y en el segundo el básico más 31–1/2%. Por el tipo básico de salario por pieza debe entenderse que es el que prevalecía cuando se suscribió el primer convenio. Así se deduce del hecho que el porciento total todos los aumentos corresponde matemáticamente a la suma de todos los aumentos logrados por los convenios desde el tipo de salario por pieza con que se comenzó al suscribirse el primer convenio. Por lo tanto en los convenios subsiguientes al primero, los obreros que trabajaron por pieza tienen derecho al tipo de salario básico por pieza más el por ciento del mismo convenido en cada convenio, bajo las fórmulas indicadas. En caso de que en alguna semana el total de salario pagado a algún obrero no alcanzare el salario mínimo federal prescrito, debido a su falta de tarea, es decir, al que en esa semana no produjo el número de piezas que de acuerdo con el tipo de salario por pieza justificase pagarle dicho salario mínimo, el patrono viene obligado a adicionar a la paga semanal de este obrero lo que falte, de manera que se le asegure un salario por lo menos igual al mínimo federal prevaleciente.

■ Como no aparece del récord que el convenio que cubre el período de 9 de enero de 1964 hasta el 9 de julio de 1966 contenga una cláusula de arbitraje, concluimos que el juez de instancia erró al determinar que la reclamación de salarios no pagados durante este convenio debe someterse a arbitraje porque afirmó: "Este convenio fue negociado estando vigente la doctrina de *Ceferino Pérez* v. *Autoridad de Fuentes Fluviales*", ya que "En este caso la propia parte querellante aceptó que de acuerdo con el convenio debe arbitrarse su reclamación." No aparece del récord tal aceptación.

En tal virtud, se modifica la sentencia en este caso dictada por el Tribunal Superior, Sala de San Juan, para que disponga lo siguiente:

1.—Se dicta sentencia a favor de la querellante condenando a las querelladas a pagarle a los obreros que trabajaron por pieza durante el período comprendido entre abril 27, 1959 hasta el 31 de diciembre de dicho año, el salario no pagado de acuerdo con la fórmula que por laudo arbitral corresponde pagar, consistente en no menos del salario federal semanal de 59¢ por hora y $23.60 por 40 horas de trabajo a la semana, más el 5% sobre dicho salario, o sobre el salario mayor que pudiere resultar de la aplicación del tipo de salario entonces prevaleciente por piezas producidas por el obrero como su tarea semanal.

2.—Los salarios a pagarse a los obreros por pieza bajo los convenios subsiguientes al primero se calcularán bajo las siguientes fórmulas, pero nunca serán menores del salario mínimo federal prevaleciente:

a) Convenio Núm. 2 por el período de enero 1 de 1960 a julio 9 de 1962 a razón del 105% del tipo de salario básico por pieza prevaleciente en abril 27 de 1959 (designado en lo sucesivo como el tipo de salario básico) más el 5%.

b) Convenio Núm. 3 por el período de julio 9 de 1962 hasta julio 9 de 1964, el tipo de salario básico más 19%

durante el primer año y más 23% durante el segundo año de dicho convenio.

c) Convenio Núm. 4 por el período de julio 9 de 1964 hasta 9 de julio de 1966 el tipo de salario básico más 27–1/2% durante el primer año y más 31–1/2% durante el segundo año de dicho convenio.

3.—Se condena a las querelladas a pagar a los referidos obreros por concepto de compensación adicional (29 L.P.R.A. sec. 246b) una suma igual a la que resultare que dejó de pagar de acuerdo con lo aquí dispuesto.

*Se devuelve el caso al tribunal de instancia para que se continúen allí los procedimientos en forma consistente con los términos de este dictamen.*