Servicios Médicos Hospitalarios San Cristóbal, Inc., h/n/c Hospital Sagrado Corazón, recurrente, *v.* Junta de Relaciones del Trabajo de Puerto Rico, demandada; Junta de Relaciones del Trabajo de Puerto Rico, peticionaria, *v.* Servicios Médicos Hospitalarios San Cristóbal, Inc., h/n/c Hospital Sagrado Corazón, demandada.

*Números:* O-68-299, O-69-56          *Resueltos:* 10 de diciembre de 1969

*Charles H. Juliá,* abogado de la recurrente y demandada; *José F. Rodríguez Rivera, Procurador General Interino, Celia Canales de González, Marta Ramírez de Vera* y *José E. Rodríguez Rosaly,* abogados de la Junta de Relaciones del Trabajo.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El 16 de diciembre de 1966 la empresa Servicios Médicos Hospitalarios San Cristóbal, Inc., haciendo negocios como Hospital Sagrado Corazón, y la Unión General de Trabajadores de Puerto Rico (U.G.T.) suscribieron un convenio colectivo que estuvo en vigor por un período de un año. El Art. IX de dicho convenio disponía el pago de una bonificación navideña en los siguientes términos:

"Sección 1—El hospital se compromete a concederle un bono de navidad a fin de año, el día 24 de diciembre, a los empleados que tengan tres (3) meses de trabajo para esa fecha, equivalente a una semana de trabajo. Disponiéndose, que aquellos empleados que cesaren de su empleo antes de esa fecha, recibirán la parte del bono que le corresponde a base de prorrateo."

En 25 de junio de 1968, ya expirado el convenio la Unión radicó un cargo de práctica ilícita contra el patrono por violación del convenio, Art. 8(1) (f) de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 69(1) (f), consistente en haber omitido el pago del bono correspondiente tanto al año 1966 como al 1967. Expedida la correspondiente querella, se citó a audiencia ante un oficial examinador, a la cual comparecieron ambas partes. El asunto fue sometido mediante una estipulación de hechos, que en su parte pertinente lee como sigue: "2. El 16 de diciembre de 1966 se firmó el convenio entre las partes y estuvo en vigor hasta el 16 de diciembre de

1967"; "4. Desde principios de mayo de 1966 el patrono querellado ha estado operando el hospital . . .".

El oficial examinador rindió su informe a la Junta. Concluyó que el hospital había violado el convenio al no pagar el bono correspondiente al año 1966, mas no así respecto al 1967. En 13 de noviembre de 1968 la Junta emitió su decisión y orden, adoptando las conclusiones del examinador, pero modificándolas para determinar que la empresa también había violado el convenio al no satisfacer el bono del año 1967. El patrono solicitó la revisión de la orden en el recurso O-68-299 ante nos; la Junta, a su vez, en el recurso O-69-56, pidió que se pusiera en vigor su orden que en esencia consistía en una de cesar y desistir de violar, en manera alguna, los términos del convenio colectivo, y en tomar cierta acción afirmativa para efectuar los propósitos de la Ley consistente (a) en el pago de la bonificación a aquellos empleados que tuvieren derecho a la misma, (b) la fijación de un aviso, y (c) la notificación al Presidente de la Junta de las providencias tomadas para cumplir con la orden.

▄▄▄▄ 1. Se queja el patrono de que la Junta emitió su decisión y orden sin concederle una previa audiencia. Aduce que "[a] pesar de que las partes no solicitaron una audiencia pública la Junta motu propio debió concederla para oir a las partes, especialmente considerando que modificó el informe del examinador que la había exonerado del pago de la bonificación correspondiente al año 1967." Este planteamiento es inmeritorio. Ni la ley ni el reglamento aplicables proveen la celebración de una vista luego de rendido el informe por el oficial examinador y previa a la decisión de la querella por la Junta.(¹) Añádase a esto que la querellada, luego de emitido el informe del examinador, no radicó excepciones al mismo ni solicitó vista oral, sometiendo así el caso a base del expediente.

---

(¹) La única audiencia pública que garantiza la Ley de Relaciones del Trabajo está provista en el Art. 9(1)(a), 29 L.P.R.A. sec. 70(1)(a).

Así, la Junta fue colocada en posición de resolver inmediata-
mente, siguiendo las recomendaciones contenidas en el in-
forme "o en cualquier otra forma", ([2]) Art. II, Sec. 10 del
Reglamento Núm. 2 de la Junta de Relaciones del Trabajo, 29
R.&R.P.R. sec. 64–11. Sea ello como fuere, tratándose de una
mera cuestión de interpretación de los términos de la cláu-
sula contractual y habiendo la querellada expuesto clara-
mente su posición al aducir cierta defensa afirmativa en su
contestación a la querella, no vemos qué eficacia decisiva
hubiese tenido la celebración de otra vista ante la Junta.

■ 2. Por primera vez ante nos señala el hospital que en
virtud del Art. II del convenio, el asunto ha debido some-
terse en primera instancia al comité de quejas y agravios que
allí se crea. En su Sec. 1 dicho artículo faculta al comité para
"conocer, investigar y resolver cualquier queja, reclamación
o querella que surja" en relación con el convenio; y en su
Sec. 2 dispone que "todas las disputas y diferencias surgi-
das durante la vigencia de este [c]onvenio *podrán* ser some-
tidas al [c]omité . . . para solución final." La disposición de la
Sec. 1 se refiere, según se deduce de otras cláusulas, a las
reclamaciones individuales de los empleados; la Sec. 2 está
concebida en términos potestativos, y no obligatorios. En
vista de ello, y de lo que se expresa a continuación, no es
necesario resolver expresamente si una cláusula de este género
inhibe la intervención del organismo del estado diseñado para
mantener el equilibrio y la paz en las relaciones entre la
industria y el trabajo. ([3]) *Cf. J.R.T.* v. *A.M.A.*, 91 D.P.R. 500
(1964).

[2] En *Rivera* v. *Junta Rel. Trabajo*, 70 D.P.R. 342 (1949), indicamos
que las recomendaciones del oficial examinador no son concluyentes para
la Junta, aun cuando las partes afectadas no hayan radicado oposición al
mismo, y calificamos el informe como "una recomendación que la Junta
tiene discreción para alterar."

[3] Generalmente la Junta no interviene en controversias sobre inter-
pretación de convenios a menos que entienda que existe una lesión sustan-

*Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963), no tiene el alcance que pretende atribuirle la empresa. Se limita a vedar a las partes que recurran *al foro judicial* cuando se ha convenido contractualmente en someter las controversias a arbitraje.

Por otro lado, por lo menos en cuanto a la discrepancia sobre la satisfacción del bono correspondiente al año 1967, el mecanismo arbitral no hubiese estado disponible pues el convenio había expirado desde el 16 de diciembre, fecha anterior a la convenida para el pago. *Cf. J.R.T.* v. *P.R. Telephone Co.*, 91 D.P.R. 909 (1965).

3. La posición del hospital en cuanto a la interpretación de la cláusula contractual es que el término de tres meses que se fija en el Art. IX como condición para tener derecho a la bonificación el día 24 de ese año, se deduce a partir de la fecha en que se firmó el convenio, el día 16 anterior, y que, por tanto, ningún empleado era acreedor al bono porque no había cumplido el mencionado período de tres meses. Sostiene además que, como en 24 de diciembre de 1967 ya el convenio había expirado, ninguna obligación tenía de verificar el pago.

■ Ambas interpretaciones son especiosas. De prevalecer tendrían el efecto práctico de que las partes incorporaron una disposición sobre bonificación completamente inoperante.

Del texto mismo del Art. IX del convenio aparece que la bonificación se sujetó únicamente a la condición de que los empleados hubiesen trabajado tres meses antes del 24 de diciembre. No puede tener otro efecto que el de privar del beneficio a aquéllos que para la fecha indicada habían trabajado menos de tres meses. Si adoptáramos la interpretación del patrono estaríamos adicionándole al convenio algo que no contiene, que los tres meses se contarían a partir de la

cial al interés público. Véase, *Simmons International, Ltd. y Local 423 of Upholsterer's Union of North America, AFL-CIO*, 2 D. J.R.T. 250 (1953), citado en *Pérez* v. *Autoridad de las Fuentes Fluviales*, 87 D.P.R. 118, 125 (1963).

fecha en que el mismo se firmara. Véase, *Luce & Co.* v. *Junta Rel. Trabajo*, 86 D.P.R. 425 (1962). Debe recordarse que si bien el convenio se firmó en 16 de diciembre de 1966, los empleados que forman parte de la unión contratante venían trabajando para el patrono desde el mes de mayo.

■ En cuanto al bono de 1967 convenimos con la Junta en que los derechos acumulados durante la vigencia del convenio sobreviven a la fecha de expiración de éste. Cuando el convenio expiró en 16 de diciembre de 1967 ya los empleados que habían trabajado tres meses desde el 24 de diciembre anterior eran acreedores al bono estipulado. El hecho de que a la fecha fijada para el pago, el 24 de diciembre de 1967, el convenio hubiese expirado no priva a los empleados del bono navideño. A similar conclusión se ha llegado por otros tribunales al considerar situaciones parecidas, fundándose en que estos beneficios se conceden lograr precisamente continuidad en la prestación de los servicios. Véanse, *Valeo* v. *J. I. Case Co.*, 52 L.R.R.M. 2420 (Wis. 1963); *Marvin Turner Engineers* v. *Allen*, 44 L.R.R.M. 2626 (Texas 1959); *Livestock Feeds* v. *Local Union No. 1634*, 73 So.2d 128 (Miss. 1954); *Textile Workers Union* v. *Paris Fabric Mills*, 92 A.2d 40 (N.J. 1952). La interpretación propuesta por la querellada está reñida con la razón. Baste decir que si un empleado hubiese cesado en su trabajo antes de la fecha de expiración del convenio la empresa hubiese tenido que liquidarle y pagarle la parte proporcional de la bonificación. No puede privarse de la misma a aquellos que trabajaron hasta que expiró el convenio.

*Se dictará sentencia poniendo en vigor la orden de la Junta de Relaciones del Trabajo de fecha 13 de noviembre de 1968.*

El Juez Asociado Señor Rigau concurre en el resultado; el Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Hernández Matos no intervinieron.