JUNTA DE RELACIONES DEL TRABAJO, peticionaria, *v.* SECURITAS, INC., demandada.

*Número:* O-80-539    *Resuelto:* 20 de octubre de 1981

*Juan Antonio Navarro*, de la División Legal de la Junta de Relaciones del Trabajo de Puerto Rico, abogado de la peticionaria; *Jorge Luis Laboy Rodríguez*, abogado de la demandada.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 25 de abril de 1979 la Unión de Guardianes de Seguridad del Este ("la Unión") y Securitas, Inc. ("el Patrono") acordaron, bajo el convenio colectivo vigente entre ellos, someter al Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos la siguiente cuestión:

> Determinar si el despido del señor Emilio Montañez fue justificado o no. De determinarse que fue injustificado, el árbitro proveerá el remedio correspondiente.

El árbitro resolvió que el despido no fue justificado y ordenó la reposición del Señor Montañez en su empleo, así como el pago de los salarios dejados de percibir, más intereses sobre la cantidad total adeudada. Al rehusar el Patrono acatar el laudo, la Junta de Relaciones del Trabajo acudió ante este Tribunal en solicitud de la correspondiente orden de cumplimiento. Requerimos del Patrono que mostrase causa por la cual no debe ponerse en vigor el laudo.

El Patrono alega, en primer término, que el convenio colectivo aplicable exige que toda querella relativa a un despido deberá presentarse no más tarde de diez días des-

pués de ocurrir el mismo. Aquí se presentó el día decimoséptimo. Considera el Patrono en consecuencia que el árbitro actuó sin jurisdicción.

█ El planteamiento del Patrono es inmeritorio. El convenio colectivo también dispone que el referido término puede prorrogarse por acuerdo de las partes. En el caso presente el patrono accedió a la sumisión de la querella al proceso de arbitraje. No ha sido hasta después de la emisión de un laudo adverso que el Patrono suscita ante este foro la cuestión jurisdiccional. La conducta del Patrono representa una renuncia al término mencionado y la consiguiente prórroga del mismo. *Junta Rel. Trabajo* v. *Corona Brewing Corp.*, 83 D.P.R. 40, 44 (1961); *J.R.T.* v. *Central Mercedita, Inc.*, 94 D.P.R. 502, 509–510 (1967); *Junta Rel. Trabajo* v. *Orange Crush*, 86 D.P.R. 652, 656 (1962); F. y E. A. ElKouri, *How Arbitration Works*, 5ta ed., Washington, D.C., Bureau of National Affairs, Inc., 1978, pág. 150.

█ El Patrono argumenta, en segundo lugar, que el laudo es nulo por ser contrario a derecho. No le asiste la razón. Ni el convenio ni el acuerdo de sumisión en este caso requerían que el árbitro resolviese la cuestión sometida conforme a derecho. En tal circunstancia es improcedente la revisión por este Tribunal de supuestos errores de índole jurídica. *Junta Relaciones del Trabajo* v. *N.Y.& P.R.S/S. Co.*, 69 D.P.R. 782, 801–802 (1949); *United Steelworkers* v. *Paula Shoe Co., Inc.*, 93 D.P.R. 661, 667 (1966); *J.R.T.* v. *Cooperativa de Cafeteros*, 89 D.P.R. 498, 502–503 (1963); *Colón Molinary* v. *A.A.A.*, 103 D.P.R. 143, 155 (1974); *S.I.U. de P.R.* v. *Otis Elevator Co.*, 105 D.P.R. 832, 837 (1977).

El Patrono sostiene, en tercer lugar, que al ordenarse la reposición del empleado despedido y el pago de los salarios dejados de devengar el árbitro actuó en forma contraria a los principios de orden público encarnados en la Ley Núm. 50 de 20 de abril de 1949 (29 L.P.R.A. sec. 183)

referente al pago de un mes de sueldo y a la imposición de otras sanciones en caso de despido injustificado.

La Ley Núm. 50 fue derogada, antes de ocurrir el despido en este caso, por la Ley Núm. 80 de 30 de mayo de 1976, cuyo primer artículo, sin embargo, 29 L.P.R.A. sec. 185a, reproduce en forma expandida los principios de la ley anterior. Examinemos en consecuencia la alegación del Patrono a la luz de la Ley Núm. 80, cuyo primer artículo dispone en su parte pertinente:

> Todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo . . . donde trabaje mediante remuneración de alguna clase, contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono en adición al sueldo que hubiere devengado:
>
> (a) el sueldo correspondiente a un mes por concepto de indemnización;
>
> (b) Una indemnización progresiva adicional equivalente a una semana por cada año de servicio.

No discernimos disparidad entre la política del estatuto y el laudo emitido. No se nos ha demostrado que la intención legislativa haya sido fijar sanciones máximas exclusivas para casos de despido cuando media un convenio colectivo y un amplio acuerdo de sumisión sobre la justificación de la cesantía. ¿Cómo es que puede interpretarse que la legislación sobre la mesada ha obedecido por décadas al propósito de impedir que un árbitro, bajo un acuerdo de sumisión que no limite claramente sus poderes, ordene la reposición de un empleado y el pago de los sueldos dejados de percibir, más intereses? En Puerto Rico hemos distinguido tajantemente entre los derechos bajo un convenio colectivo y los derechos de mesada. En *Wolfe* v. *Neckwear Corporation*, 80 D.P.R. 537, 543 (1958), afirmamos:

> Naturalmente, en dichos convenios colectivos de trabajo, la ausencia de causa justa da derecho a la reposición y al pago de los salarios dejados de devengar, y no se trata de una

simple cuestión de mesada, como sucede al amparo de la Ley Núm. 50 de 20 de abril de 1949. . . .

En *Rivera* v. *Security Nat. Life Ins. Co.*, 106 D.P.R. 517, 526 (1977), expresamos que:

De concluir la Junta que el patrono ha incurrido en una práctica ilícita al despedir [a] un trabajador por estar dedicado a actividades gremiales puede requerirle que cese en y desista de dicha práctica y ordenar su reposición, y abonándose o no la paga suspendida.

Si examinamos la práctica ante la Junta Nacional de Relaciones del Trabajo, observamos que laudos como el presente, y aun aquellos que representan para el obrero mayores beneficios, son perfectamente válidos. *In the Matter of F. W. Woolworth Co. et al.*, 90 NLRB 289 (1950); *Isis Plumbing & Heating Co. et al.*, 138 NLRB 716 (1962).

Afirma el Patrono, por último, que se le privó del debido procedimiento de ley y de la igual protección de las leyes al negarse el árbitro a suspender la vista por ausencia del abogado del Patrono. La violación del debido procedimiento de ley es una de las causas de nulidad de un laudo de arbitraje. *J.R.T.* v. *Aut. de Comunicaciones*, 110 D.P.R. 879 (1981). El hecho de que un árbitro le niegue a una parte la oportunidad de estar representada en la vista por un abogado no constituye de por sí un error que forzosamente deba dar lugar a la revocación. H. Cancio, *El Arbitraje Obrero-Patronal en Puerto Rico*, Instituto de Relaciones del Trabajo, U.P.R., 1953, págs. 43–44. No hubo en este caso, por razón de esa negativa, trato preferencial alguno, lo cual podría suscitar problemas de desigualdad ante la ley. Ninguna de las partes estuvo representada por abogado en la etapa de la vista, pero se le ofreció a ambas plena oportunidad de ser oídas, presentar su prueba y contrainterrogar a los testigos de la otra parte. Los procedimientos de arbitraje no requieren la aplicación rígida de todas la normas de procedimiento desarrolladas para los casos penales y civiles ordinarios.

H. T. Edwards, *Due Process Considerations in Labor Arbitration*, 25 Arbitration J. 141, 142 (1970); C. B. Craver, *Inquisitorial Process in Private Employment*, 63 Cornell L. Rev. 1, 5 (1977); R. I. Abrams, *The Integrity of the Arbitral Process*, 76 Mich. L. Rev. 231, 236, 252 (1977). La celebración de la vista sin la presencia de los abogados de las partes se produjo en este caso, además, en el contexto de una negativa a suspender la vista por enfermedad del abogado del Patrono. En tales circunstancias debe demostrársele al Tribunal que la suspensión era procedente y que resultó en perjuicio de la parte peticionaria. Cancio, *op. cit.*, pág. 44. Los autos no revelan que tal fuese el caso aquí.

*Se ordenará al Patrono el cumplimiento del laudo impugnado.*